MONTPELIER SAVINGS BANK & TRUST COMPANY, Appellant,
vs. SCHOOL DISTRICT NUMBER FIVE OF THE TOWN OF
LUDINGTON, Respondent.

*October 24—November 28, 1902.*

*School districts: Bonds: Limit of indebtedness: Evidence: Illegal action of school board: Ratification: Special meeting: Providing for tax: Presumption: Refunding bonds: Estoppel: Bona fide purchasers: Judgments: Res judicata.*

1. In proving that bonds of a school district were in excess of the constitutional limit of indebtedness, the best evidence of the territory comprised in the district is the order of the town board creating it, and the best evidence of the amount for which property was assessed is the assessment roll. The tax rolls are, at most, only secondary evidence of those facts.

2. A school board, on August 24th, agreed upon a compromise or settlement of certain claims against the district, issued school orders to carry it out, and borrowed money on behalf of the district to pay such orders. These acts were all without authority of law and void. A special district meeting to be held on September 1st was thereupon called and noticed pursuant to sec. 427, S. & B. Ann. Stats. (which required notices to be posted six full days prior to the meeting and, if a tax was to be voted, that three fourths of the legal voters should be notified, either personally or by written notice left at their residences, at least six days before the appointed time). At that meeting a resolution was adopted, reciting and ratifying the action of the board, directing the board to borrow a certain sum for the purpose of "refunding said indebtedness" and to issue long-time bonds therefor, and providing for the levy of a tax to pay the *annual interest* on said loan. No other tax was voted at that meeting. Sec. 3, art. XI, Const., requires that before or at the time of the incurring of any indebtedness a school district shall provide for the collection of a direct annual tax sufficient

to pay the interest as it becomes due and also to *discharge the principal* within twenty years. *Held,* that there could be no presumption that, at some other special meeting called and held before the meeting mentioned, there had been a compliance with said constitutional requirement.

[3. Whether the issuance of refunding bonds constitutes the incurring of any indebtedness within the meaning of sec. 3, art. XI, Const., not determined.]

4. If the district itself had compromised the claims against it, it could, under sec. 474, S. & B. Ann. Stats., have borrowed the money to carry out such compromise only for a term not exceeding one year, upon voting a special tax of a sum equal to the loan, to be collected with the next levy, and could not for such purpose, under any circumstances, issue long-time bonds. *Held,* that it could not so ratify the illegal action of the school board as to authorize the borrowing of money under sec. 476a, S. & B. Ann. Stats., upon long-time bonds to refund the indebtedness so attempted to be incurred on its behalf, and that the bonds issued in pursuance of the resolution above mentioned were not in fact refunding bonds.

5. A purchaser of the bonds so issued who received, with the bonds, a certified copy of the minutes of the special district meeting, was chargeable with knowledge of the facts stated therein and with knowledge of the laws of this state as to the powers of school districts to borrow money and issue bonds, and hence with knowledge that the bonds were not and could not be refunding bonds. He was therefore, to that extent, not a *bona fide* purchaser, and the district is not estopped, as against him, to contradict a recital in the bonds that they were issued for the purpose of refunding its indebtedness under and pursuant to ch. 231, Laws of 1887 (sec. 476a, S. & B. Ann. Stats.).

6. A certificate in the bonds that all the acts, etc., required to be done precedent to and in the issue of the bonds had been properly done, etc., in due form as required by law, is *held* to refer to acts required by the statute mentioned in the bonds (ch. 231, Laws of 1887), and not to be an express statement that constitutional requirements had been complied with.

7. One who, having bought from G. & Co. bonds payable to bearer and unindorsed, claims that, even if he was not himself a *bona fide* purchaser, he succeeded to the rights of G. & Co. as *bona fide* purchasers and was entitled to the benefit of any estoppel in their favor, has the burden of showing that G. & Co. were such purchasers, the presumption being, under the circumstances stated, that they were the original payees of the bonds.

8. A judgment is conclusive in a second suit between the same par-

ties on the same cause of action upon all questions which
might have been litigated in the first suit; but when the second
suit is upon a different cause of action the first suit is only con-
clusive upon the issues in fact litigated and decided.

9. Where plaintiff sued upon four of a series of six school district.
bonds and, after an answer had been put in alleging generally
that the bonds were issued without authority of law and with-
out consideration, obtained judgment because of defendant's
failure to appear at the trial, the question of the validity of the·
bonds under constitutional provisions was not *res judicata* in
a suit upon the other two bonds.

APPEAL from a judgment of the circuit court for Eau
Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

This is an action to recover upon two school district bonds·
issued by the officers of the defendant district September 1,
1888, for $500 each, with annual interest at eight per cent.,
according to the terms of interest coupons attached.   One of·
said bonds was payable February 1, 1895, and the other·
February 1, 1896, and they were two of a series of six bonds·
of $500 each, all executed at the same time, and being in the
following form:

"REFUNDING BOND.                     $500.00

"State of Wisconsin,   }        Town of Ludington,
"Eau Claire County.  }     School District Number Five.
    "*Know all men by these presents* that *School District
Number Five* of the said Town of Ludington acknowledges:
itself to owe, and for value received will pay to the bearer of·
this bond, at the Chippewa Valley Bank, Eau Claire, Wis-
consin, the sum of five hundred dollars in lawful money of the·
United States, on the first day of February, 1895, with
interest at the rate of eight per cent. per annum, payable
annually at the place aforesaid, on the first day of February
of each year, as evidenced by and upon the presentation and
surrender of the annexed interest coupons, respectively, as
the same mature.   For the full and prompt payment of this:
bond and interest, the faith, credit, and revenues of said
district are irrevocably pledged.   This bond is one of a series
of six of like tenor, date, and amount issued by said district
for the purpose of refunding its indebtedness under and pur--

suant to chapter 231 of the Laws of Wisconsin for the year 1887, the same being duly authorized by the vote of said district at a special meeting thereof duly held on the 1st day of September, 1888. And it is hereby certified that all the acts, conditions, and things required to be done precedent to and in the issue of said bonds have been properly done, happened, and performed in regular and due form as required by law.

"In witness whereof the said school district, and the board thereof, has caused these presents to be executed and signed by its clerk, director, and treasurer, this 1st day of September, 1888.

> "D. L. Brown, Treasurer,
> "B. E. Seeley, Clerk,
> "A. Graves, Director."

The plaintiff claimed to be a *bona fide* holder of said bonds for value. The issues raised by the answer which are now urged are (1) that the bonds were issued without consideration, and were not issued to refund any indebtedness of the district; (2) that they exceeded the constitutional limit of indebtedness; (3) that no tax was levied to pay the principal and interest thereof; and (4) that the plaintiff was not a *bona fide* holder.

The action was tried before a jury, and the trial judge directed a verdict for the plaintiff, subject to the opinion of the court. Thereafter the trial judge set aside the verdict and entered judgment in favor of the defendant, from which judgment the plaintiff appeals.

For the appellant there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.* They contended, *inter alia,* that the issuing of refunding bonds was not "incurring any indebtedness" within the meaning of the constitution. *Hughes Co. v. Livingston,* 104 Fed. 306–317; *Cass Co. v. Wilbarger Co.* 25 Tex. Civ. App. 52, 60 S. W. 988; *Wilson v. Board of Education,* 12 S. D. 535, 81 N. W. 952; *Winston v. Ft. Worth* (Tex.), 47 S. W. 740; *Independent School Dist.*

*v. Rew,* 111 Fed. 1; *Marion Co. v. Coler,* 67 Fed. 60; *National L. Ins. Co. v. Mead,* 13 S. D. 37, 82 N. W. 78; *Sioux City v. Weare,* 59 Iowa, 95, 12 N. W. 786. Bonds issued to refund an indebtedness are valid, although the original indebtedness which is refunded thereby may be invalid. *Brown v. Ingalls,* 81 Fed. 485; *Coloma v. Eaves,* 92 U. S. 484; *Jasper Co. v. Ballou,* 103 U. S. 745; *National L. Ins. Co. v. Huron,* 62 Fed. 778; *Keithsburg v. Frick,* 34 Ill. 405; *Huron v. Second Ward S. Bank,* 86 Fed. 272.

For the respondent there was a brief by *Teall & Thomas,* and oral argument by *De Alton S. Thomas.*

WINSLOW, J.   Two objections are made to the validity of the bonds in question, based upon alleged failure to observe constitutional requirements, viz: (1) That they exceeded five per cent. of the assessed valuation of all the taxable property of the district; and (2) that no tax was levied either before or at the time of the incurring of the debt sufficient to pay the principal and interest thereof. Sec. 3, art. XI, Const.

It is sufficient to say, with regard to the first of these objections, that there was no sufficient proof showing that the constitutional limit of indebtedness had been exceeded in the present case. The burden of proof was of course on the defendant. In order to prove its contention, it must show (1) what taxable property, real and personal, was included in the district, and (2) for what amount that property was assessed. These two facts must be shown by records, because they are both matters of record. The real property in the district is primarily to be shown by the order of the town board creating the district, filed in the office of the town clerk (sec. 413, Stats. 1898), and this order is manifestly the best evidence of the territory comprised in the district, and the exclusive evidence thereof, unless a case is made showing that it cannot be produced, thus paving the way for the introduc-

tion of secondary evidence of its contents.   In the present case ·the order was not produced or offered in evidence, nor was there any proof of its contents.   The best evidence of the amount for which property is assessed is necessarily the assessment roll.   In the present case the assessment roll was not offered in evidence nor was its absence accounted for by any proof which was sufficient to justify the introduction of secondary evidence.   In fact, the only pieces of evidence having any tendency to throw light on the subject which were introduced were the tax rolls of the town for the years 1887 and 1888.   These were properly objected to.   They were only secondary evidence, at the best, of the limits of the district and of the assessed values of property therein, and, no sufficient showing having been made for the admission of secondary evidence, they should have been rejected, and cannot be regarded as proving either of the necessary facts.

As to the provision that a direct tax sufficient to pay the principal and interest of the debt shall be provided for "before or at the time" of the incurring thereof, the question whether· this requirement is proven to have been neglected is far more serious and requires a statement of the evidence in the case.   It appears by the evidence that in August, 1888, there were pending two actions in favor of the defendant school district against Ole Oleson and Samuel Loper, respectively, and that said Oleson and Loper had also made claims against the school district for large sums, but whether actions had actually been commenced on these latter claims is a matter of doubt   On the 24th day of August, 1888, the district board, composed of A. Graves, director, B. E. Seeley, clerk, and D. L. Brown, treasurer, agreed upon a settlement with Loper and Oleson of all the litigation and claims aforesaid, and on the same day issued school district orders to Loper and Oleson for $1,187.50 each; also orders to the sheriff, attorney, and others for services in the case, amounting in all to $3,000.   On the same day six voters of the dis-

trict gave to the clerk a written request for the calling of a special meeting "for the purpose of refunding the indebtedness of said district and for raising money to pay such indebtedness, and for levying a tax to pay the annual interest thereon, and for the purpose of acting on the action of the school board in settling actions in which said district is interested." Notice of the holding of a special meeting was duly given, and the special meeting was held pursuant to the notice so given on the 1st day of September, 1888. By the minutes of this meeting, which were put in evidence, it appears that the school board reported that they had settled and compromised the Oleson and Loper actions, and that a stipulation signed by the board and by Oleson and Loper and their attorneys was read, filed, and approved. A long resolution was then passed, which, after reciting the settlement of the suits by the board at a sum aggregating $3,000, and that the school board had executed and delivered the school orders of the district "for funds borrowed by them" to pay said sum, ratified and approved the action of the board in making the settlement, "and in borrowing the sum of three thousand dollars, and delivering the orders of the school district therefor," and directed the board to borrow the sum of $3,000 for the purpose of "refunding said indebtedness," and issue bonds therefor (detailed directions as to form and conditions of the bond being given), and that a tax of $240 be levied to pay the annual interest on said loan. The bonds bear date of September 1, 1888, the same day upon which the district meeting was held, but when they were in fact delivered or to whom they were delivered nowhere appears in the evidence. On December 31, 1888, they are shown to be in the hands of Garland & Co., bankers, at Minneapolis, Minnesota, from whom the plaintiff purchased them in the ordinary course of business, in January following, paying full value therefor. The only evidence which tends to show that the tax which the constitution requires

was not provided for "before or at the time of" the incurring of the debt consists in the minutes of the special district meeting of September 1st, when the bonds were voted, which minutes show that the only tax then levied or provided for was a tax of $240 to pay the annual interest on the bonds. It is argued by the appellant that this proof is entirely insufficient; that the presumption is that all legal and constitutional requirements were complied with until the contrary is shown; and hence that it will be presumed, in the absence of affirmative evidence to the contrary, that the proper tax was voted at some other special meeting properly called and held before the meeting at which the bonds were voted. This contention is specious, but we are satisfied that, under the facts here present, it cannot prevail.

The attempted compromise of the Loper and Oleson claims was made and school orders issued to carry it out on the 24th day of August, 1888. Both the compromise and issuance of the school orders were absolutely void acts. The board had no power to make a compromise. If it could be done at all, it must be by the school district itself. Nor did the board have power to issue orders to carry out such a compromise. S. & B. Ann. Stats. sec. 430, subd. 15; Id. sec. 446, subd. 4; *Kane v. School Dist.* 52 Wis. 502, 9 N. W. 459. These acts of the school board, therefore, created no debt on the part of the school district, and the most that can be claimed on the part of the appellant is that the transaction might be ratified by the district at a special meeting. Such ratification, however, could only take place at a special school district meeting called by notices posted six *full* days prior to the meeting, and served personally (or by leaving at their places of residence) on three fourths of the legal voters of the district. Sec. 427, S. & B. Ann. Stats. It is very evident that the special meeting in the present case was called with railroad speed after the maturing of this very suspicious looking compromise. The compromise was

made August 24th; the request for a special meeting was immediately made; the notices must have been posted and served with the utmost celerity in order that a legal meeting might be held on the 1st day of September, but eight days later. Is it reasonable to presume that another special meeting was called, to meet a few hours earlier, and that a tax was provided for at that meeting when as yet there was no indebtedness and the attempted settlement had not been approved? We think this would be working the theory of presumption to an unreasonable extent. The law will not presume that which in its very nature is preposterous. The constitution requires that the tax be provided for either before or at the time of the incurring of the debt. As no presumption can be indulged that it was provided for before the special meeting of September 1st, and as the minutes show that it was not provided for at that meeting, it must be concluded that this provision of the constitution was not complied with.

But this conclusion is met on the part of the appellant by the claim that these bonds are refunding bonds, and that under the authorities the issuance of refunding bonds either to the holders of existing bonds, or to be negotiated and provide a fund for the retirement of existing bonds, does not constitute the "incurring" or "creating" of a debt, but is simply a change of the form of an existing debt. This doctrine has considerable authority in its support. *Miller v. School Dist.* 5 Wyo. 217, 39 Pac. 879; *Los Angeles v. Teed,* 112 Cal. 319, 44 Pac. 580; *Palmer v. Helena,* 19 Mont. 61, 47 Pac. 209; *Opinion of the Justices,* 81 Me. 603, 18 Atl. 291; *Powell v. Madison,* 107 Ind. 106, 8 N. E. 31; *Independent School Dist. v. Rew,* 49 C. C. A. 198, 111 Fed. 1. The supreme court of the United States, however, in *Doon Tp. v. Cummins,* 142 U. S. 366, 12 Sup. Ct. 220, has held that bonds issued to be sold and the proceeds to be applied to the payment of existing bonds constitute an additional indebted-

ness.  We shall assume the correctness of the appellant's posi-
tion for the purposes of this case without intimating any
opinion thereon.  The question then to be considered is,
Does the evidence show that these bonds were in fact refund-
ing bonds?

The minutes of the school district meeting, upon the most
favorable theory for the appellant which can be adopted,
show the following facts:   (1) That the school board, with-
out authority of law, had attempted to settle and compromise
certain lawsuits and controversies with Oleson and Loper;
(2) that they had, without authority, issued school orders to
carry out that settlement;  (3) that they had, without author-
ity, assumed to borrow $3,000 on behalf of the district to pay
the illegal orders;  (4) that the school district at a special
meeting had attempted to ratify the acts of the board, and
to authorize the issuance of bonds to pay the illegal debt thus
incurred.   These facts were all brought to the knowledge of
the plaintiff before it paid for the bonds, because it appears
that the plaintiff received a certified copy of these minutes
with the bonds.   In addition to these facts, the plaintiff was
also charged with knowledge of the laws of Wisconsin as to
the powers of a school district to borrow money and issue
bonds.   A school district in this state is but a *quasi* corpora-
tion, with limited powers.   It can only do those things which
the law expressly allows or implies.   At the time this loan
was made it was only authorized to borrow money for three
purposes, viz.:   (1) When upon an unusual exigency it had
voted a tax to be collected with the next levy, it could borrow,
for a term not exceeding one year, a sum not exceeding the
tax, which tax must be set apart to pay the loan;  (2) for
the purpose of aiding in the erection of a schoolhouse;
(3) for the purpose of refunding its indebedness upon loans
previously made.   S. & B. Ann. Stats. secs. 474, 475, 476*a*,
the last-named section being ch. 231, Laws of 1887.

A mere casual inspection of these sections makes very

plain the fact that if the school district itself desired to compromise a lawsuit and borrow a sum of money to carry the compromise into effect, it could only do so under the "unusual exigency" section, and under this section it could only make a temporary loan, running not more than one year, to be paid from the next tax levy, and *could not,* under any circumstances, issue long-time bonds with coupons running years into the future. How can it accomplish by indirection that which it has no power to do directly? How can an illegal act on the part of the school board endow the district with greater powers than the law in terms gives it? The general principle is that only those irregular acts can be ratified by the governing body of a corporation which that body had power to do or to authorize *ab initio.* The district had no power by law to settle these claims and issue time bonds therefor, nor did it have power to authorize the school board to do so. How, then, can it do so by ratification? By what necromancy has the unauthorized and lawless act of the school board made that lawful which before was unlawful? The evident purpose of the law is to withhold from a school district the power to issue long-time bonds except for two purposes, viz., to erect a school building, and to refund a previous loan. To allow this purpose to be circumvented and defeated by the flimsy expedient here shown would bring reproach upon the law, and go far to justify a vulgar impression, which is unfortunately very prevalent, namely, that the law is but a system of high-sounding rules, which may be evaded by the tricks or quibbles of a sharp lawyer. Our conclusion is that the bonds in question were not in fact refunding bonds, and that this fact affirmatively appeared by the minutes of the school district meeting, a copy of which minutes was furnished to the appellant before it paid for the bonds.

The doctrine of estoppel by recitals in a municipal bond is well understood; it is, in substance, that where a municipal corporation is authorized by law to issue negotiable bonds

28] AUGUST TERM, 1902. 633

Montpelier S. B. & T. Co. v. School Dist. No. 5, 115 Wis. 622.

for certain purposes or upon certain conditions, and power is given to corporate officers to determine whether the facts exist or the conditions have been performed justifying the issuance of the bonds, and such officers certify in the bonds that such facts exist or such conditions have been performed, the corporation will be estopped, as against a *bona fide* holder, from contradicting the certificate. 1 Dillon, Mun. Corp. (4th ed.) §§ 520–549. See *Independent School Dist. v. Rew,* 49 C. C. A. 198, 111 Fed. 1, and cases collected in opinion. In the present case, doubtless, if the appellant had not been informed by the record of the district meeting that these bonds were not refunding bonds, but had relied upon the recitals in the bonds themselves, it would have been entitled to the protection which those recitals afford to a *bona fide* purchaser; but, having such knowledge, it cannot rely upon them. So far as it had knowledge it is not a *bona fide* purchaser, and it had knowledge that the bonds were not, and could not under the circumstances be, refunding bonds.

Not being refunding bonds, to the knowledge of the plaintiff, the constitutional requirement that a tax must be provided for before or at the time of the incurring of the debt becomes imperative. *Herman v. Oconto,* 110 Wis. 660, 86 N. W. 681; *Kyes v. St. Croix Co.* 108 Wis. 136, 83 N. W. 637. It is shown that no such tax was provided for; hence the bonds were invalid, unless the plaintiff is helped out by some other legal principle. It cannot be helped out of this difficulty by the doctrine of estoppel by recitals, because there is no express recital in the bonds that the constitutional requirements have been complied with. It has been held that an express recital in a bond that a constitutional requirement has been complied with in a case where the corporate officers were authorized to determine the fact of compliance will estop the corporation from denying the recital as against a *bona fide* holder. *Gunnison Co. v. Rollins,* 173 U. S. 255, 19 Sup. Ct. 390. This we believe is the farthest

634    SUPREME COURT OF WISCONSIN.    [Nov.

Montpelier S. B. & T. Co. v. School Dist. No. 5, 115 Wis. 622.

point to which any court has gone in the doctrine of estoppel
by recitals as applied to constitutional requirements. We
do not express any opinion upon the proposition, because it
is not necessary to do so. There is no express recital in the
bonds before us that any constitutional requirement has been
complied with. The general certificate that all "acts and
things required to be done" have been done as required by
law plainly refers to the acts and things required by the law
referred to in the bond, and cannot be construed to be an ex-
press statement that a constitutional requirement has been
complied with.

But the appellant contends that, even if it is not a *bona
fide* purchaser, Garland & Co. were *bona fide* purchasers,
and it succeeds to their rights notwithstanding it had notice
of defenses. The doctrine that a *bona fide* holder of com-
mercial paper may transfer all his rights to an indorsee who
has notice of defenses therein is well settled. *Kinney v.
Kruse,* 28 Wis. 183; *Gunnison Co. v. Rollins, supra;*
1 Daniel, Neg. Inst. § 803. Starting with this doctrine, and
assuming that it is shown that Garland & Co. are *bona fide*
purchasers, the plaintiff's claim is that as against Garland &
Co. the defendant was estopped by the recitals in the bonds
from denying that they were refunding bonds; and that,
such being the case, the estoppel exists in favor of the plaint-
iff as well, and thus the constitutional requirement requiring
the levy of the tax becomes inapplicable because it does not
cover refunding bonds. The difficulty is with the assump-
tion that Garland & Co. are *bona fide* holders. The bonds are
payable to bearer, and are unindorsed. Such being the case,
after the plaintiff had shown that it received the bonds from
Garland & Co. the presumption is that Garland & Co. were
the original payees. As against the original payees, the
proof of illegality or want of consideration is a complete de-
fense. The burden was on the plaintiff to show that Garland
& Co. were innocent purchasers as well as itself. There was

no showing of this kind made; hence this contention also fails. *Bissell v. Morgan,* 11 Cush. 198; 1 Daniel, Neg. Inst. § 814a; 15 Am. Law Rev. 354.

This brings us to the last contention made by the appellant, which is that the question of the validity of these bonds is *res adjudicata* between the parties. It was shown by the evidence that the appellant brought suit against the defendant in 1895 upon the other four bonds of this same series; that an answer was put in by the respondent alleging as a defense, in general terms, that the bonds were issued without authority of law and without consideration; that when the case came on for trial the defendant made no appearance, and judgment was rendered for the appellant; that the defendant afterwards made a motion to set aside the judgment and for a new trial on affidavits attempting to excuse the default and setting forth a copy of the records of the school district, and the motion was denied. This, in substance, is the showing upon which the claim of *res adjudicata* is based. The legal principle is that a judgment is conclusive in a second suit between the same parties on the same cause of action, upon all questions which might have been litigated in the first suit; but when the second suit is upon a different cause of action the first suit is only conclusive upon the issues in fact litigated and decided. *Grunert v. Spalding,* 104 Wis. 193, 80 N. W. 589; *Hart v. Moulton,* 104 Wis. 349, 80 N. W. 599. Although the bonds in the former action were a part of the same series as those now in suit, the cause of action in this suit is not the same as in the prior suit. *Nesbit v. Riverside Ind. Dist.* 144 U. S. 610, 12 Sup. Ct. 746. The two actions are based upon different instruments. Hence the prior judgment is only binding as to issues actually litigated. It appears that no constitutional question was raised, litigated, or decided in that action at any stage. Hence the judgment is not *res adjudicata* here upon any such questions.

Our conclusion is that judgment for the defendant upon the proofs was rightly ordered.

*By the Court.*—Judgment affirmed.

MARSHALL, J., took no part.