SARAH L. LEMON, Appellee, v. THE SIGOURNEY SAVINGS
   BANK OF SIGOURNEY, IOWA, Appellant.

**Banks and banking:** DEALINGS WITH CASHIER: EVIDENCE. On an
1  issue as to whether the cashier of a bank in dealing with a
   customer represented the bank, or whether the transactions
   were personal between the cashier and customer, the evidence·
   is held to present a question of fact for the jury.

**Same:** RES JUDICATA. A finding in an action against a bank for
2  the amount of a deposit, that the sum had been paid by the
   bank in notes of third parties payable to the depositor, is not
   an adjudication in a subsequent action against the bank for
   the proceeds of the notes collected by it.

**Election of remedies.** The prosecution of an action against a
3  bank for the amount of a deposit which it was determined had
   been paid by a transfer to the depositor of the notes of third
   parties, is not an election of remedies, barring an action for ·
   the proceeds of the notes left with the bank and collected by it.

**Ultra vires.** A bank is responsible to its customers for the acts
4  of its cashier in receiving and collecting securities left with
   it in the usual course of business.

*Appeal from Keokuk District Court.—* HON. B. W. PRES-
                    TON, Judge.

              TUESDAY, JUNE 12, 1906.

   THE opinion states the case.— *Reversed.*

   *C. H Mackay,* for appellant.

   *D. W. Hamilton* and *J. P. Talley,* for appellee.

   WEAVER, J.— The Sigourney Savings Bank, a cor-
poration, was organized under the laws of this state to carry
on a banking business at Sigourney, Iowa. Its cashier and
principal manager was G. F. Utterback, who served in that
capacity during all the period covered by the transaction in

controversy. The plaintiff, a cousin and intimate friend of Utterback, was formerly a resident of Sigourney, but afterward removed to Chicago. Some years before the commencement of this action plaintiff as she claims deposited or placed in the hands of the Savings Bank to be loaned for her the sum of $2,000, and about the same time deposited a like sum for a like purpose in the Keokuk County State Bank. The first-named sum had been accounted for before the commencement of this action, except a portion thereof represented by the note of one Redfern, and the further sum of $200, which seems to be included in the notes which were turned out to plaintiff as hereinafter shown representing the second deposit of $2,000. The last-named sum remained with the Keokuk County State Bank for several years, until November 23, 1899, when upon an order given by plaintiff, one Tim Lemon drew the money from that bank in the form of a draft or bill of exchange on the Davenport National Bank. Tim Lemon indorsed and delivered the draft to the defendant bank or to its cashier Utterback, who thereupon executed to plaintiff a certificate of deposit in the following form: " Sigourney Savings Bank. No. 17,180. $2,000 Sigourney, Iowa, Nov. 23, 1899. Sarah L. Lemon has deposited in this bank two thousand dollars ($2,-000.00), payable to the order of cashr. on return of this certificate properly endorsed. Not subject to check. G. F. Utterback, Cashier." At some later date this certificate was indorsed by the cashier and after his death was found by the receiver among the papers of the bank. On the same day on which this deposit was made, Utterback wrote plaintiff, reporting the matter as follows: " Sigourney Savings Bank. Sigourney, Iowa, Nov. 23, 1899. Sarah L. Lemon, 166 E. North Ave., Chicago, Ill.—Dear Cousin: Tim got your $2,000 to-day, and brought it over to our Bank, and we will get it loaned out in a very few days and then send you the papers etc. I may make it in 2 or 3 loans but one thing sure will get you good ones etc. We have loaned out

over ten thousand dollars during the last Mo. and could have loaned this a long while ago etc.   Are all well.   Your Coz. G. F. Utterback."

In May following this deposit the plaintiff visited Sigourney, and while there had an interview with her cousin the cashier, who told her that her money was out in good loans and on her request for some voucher therefor gave her a receipt in the following form:

Sigourney Savings Bank.

J. Utterback, President.   W. I. McLean, Sr., Vice President.   G. F. Utterback, Cashier.   Thomas Kelly, Asst. Cashier.

Sigourney, Iowa, May 4, 1900.

Received of Sarah L. Lemon the following notes secured by mortgage.        G. F. Utterback, Cashier.

| Date. | Names. | Due. | Amt. |
|---|---|---|---|
| 11–15–99 | Wm. & Emma Street..... | 11–15–1902 | $400 |
| 11–25–99 | G. A. & Mary E. Kriese.. | 11–25–1901 | 700 |
| 12– 9–99 | Ezra A. & Lida A. Gullett | 12– 9–1904 | 600 |
| 2–28–1900 | C. J. & Lida Clubb...... | 2–28–1902 | 500 |

Total ...................................$2,200

Plaintiff testifies that this receipt was delivered to her by Utterback in the bank and from his place behind the counter with a verbal assurance that the loans were good, and the bank would take good care of the papers.   The notes described in the receipt had all been taken or purchased by the bank in its own name, and had been entered accordingly on its discount register; but about the time of plaintiff's visit to Sigourney in the spring of the year 1900, they were " charged off " as testified by the assistant cashier.   None of the notes were ever in fact actually delivered to the plaintiff and they remained in the bank or in the hands of the cashier until fully paid.   The makers paid the interest from

time to time to the bank or to Utterback who remitted it
to plaintiff.   As the notes fell due they were taken up by
the makers, payment in one case being made to the assistant
cashier and in others to Utterback.  The payments were
made at the bank and the notes canceled by the " paid "
stamp of the bank.   The mortgages were canceled of record
by the assistant cashier at Utterback's direction.   No part
of the principal of these notes was ever remitted or other-
wise accounted for to the plaintiff.   The correspondence
with plaintiff concerning the money and notes from the be-
ginning of their dealings in 1894, was carried on by Ut-
terback.   His letters were written on the bank stationery,
but were usually couched in the familiar terms which char-
acterize correspondence between relatives and friends, and
were nearly if not quite always signed by him in his indi-
vidual name without adding his title of cashier.   When re-
ferring to plaintiff's money and to loans made for her his
language at times would indicate that he was representing
the bank.   For example, in one letter he says:   " At the
time we made your first loan we had several chances to make
more, but later on there was no demand."   Again he says:
" If you want us to loan your money for you, will get you
good first mortgage loans on farms such as we would be
willing to take off your hands at any time you would want
to dispose of them.   They would be made in your name and
send the papers to you as soon as made out and then when
the interest became due you could send the note to us to col-
lect."   In other letters the form of expression is, " I inclose
you draft for interest collected," or " will get you good
loans," or " Enclosed find draft," etc.   After the notes had
all been collected and while the principal thereof was still
unaccounted for, G. F. Utterback committed suicide, and an
investigation disclosed that he had misappropriated the
funds of the bank to a very large amount.   Upon this dis-
closure being made, D. T. Stockman, a stockholder in the
bank, brought an action in the district court for the appoint-

ment of a receiver to take charge of its affairs and wind up
its business.    Plaintiff first presented her claim to the re-
ceiver who refused to approve it.    Thereafter the plaintiff
filed a petition of intervention in said proceeding.    In the
first count of said pleading she alleged the placing of said
four promissory notes with the bank and the collection there-
of by the bank and its failure to account therefor.    In the
second count of the petition of intervention she alleged the
deposit by her of $2,000 in the Keokuk County State Bank,
the subsequent withdrawal of said sum on her order by Tim
Lemon, who deposited the same in the Sigourney Savings
Bank, which deposit she alleged had never been paid or ac-
counted for.

On these allegations she asked for judgment against
the bank and that it be approved as a claim against the funds
in the hands of the receiver.    Issue was taken upon this
petition; the defendants denying the first count and alleg-
ing that so far as Utterback acted with reference to receiv-
ing and collecting the notes he was acting as plaintiff's agent
and not as cashier of the bank, and if he did at any time
act in the name of the bank in that respect it was without
authority.    Concerning the allegations of the second count
defendants admitted the deposit of the $2,000 for the plain-
tiff by Tim Lemon, but alleged that a certificate of de-
posit was issued therefor which had since been paid and sat-
isfied.    Pending the trial of these issues the plaintiff volun-
tarily dismissed the first count of her petition without preju-
dice.    The remaining issue was submitted to the jury un-
der instructions by the court to the effect that if plaintiff
had accepted the notes in lieu of the money or certificate of
deposit, then she was not entitled to recover upon said sec-
ond count.    The jury found against plaintiff upon this issue,
and judgment was entered accordingly.

Thereafter plaintiff instituted the present action at
law against the defendant bank.    The first count of her pe-
tition is substantially a restatement of the matters pleaded

in the first count of the petition of intervention above referred to as having been dismissed without prejudice, while the second count seeks to recover an amount which she alleges was collected by the defendant upon the note of Redfern representing a loan made by the bank out of the original or first sum of $2,000 deposited by her as noted in the foregoing statement. To this petition the defendant pleads in denial and further pleads the intervention by plaintiff in the receivership proceedings, the disallowance of her claim by the receiver, and the trial, verdict, and the judgment rendered therein, as an adjudication by which plaintiff is barred and estopped from further asserting or prosecuting her alleged right of action. A jury was impaneled for the trial of these issues and at the conclusion of the testimony defendant moved for a directed verdict in its favor upon grounds which may be condensed as follows: (1) That the evidence conclusively establishes a prior adjudication of the controversy; (2) that there is no evidence tending to show liability on part of the bank for the acts of Utterback; (3) that there is no negligence shown on part of the bank; and (4) that so far as the bank took any part in said transactions with the plaintiff it acted gratuitously. This motion was sustained and verdict and judgment for the defendant were rendered accordingly. It is from this judgment the plaintiff appeals.

The foregoing extended statement makes unnecessary any discussion of most of the fact propositions in the case. It is the contention of the appellee that plaintiff's dealings 1. Banks and Banking: dealings with cashier: evidence. in respect to the notes were not with the bank, but were personal transactions between her and Utterback concerning which the bank assumed no responsibility and is chargeable with no duty or liability. But it is putting it very mildly to say that in view of the conceded facts and of the other facts above referred to upon which there is a conflict of testimony, this question was clearly one for the jury. Had it been submitted for a spe-

cial verdict and the jury had found that in receiving and
dealing with the plaintiff's money and securities the cashier
acted for the bank and gave plaintiff to understand that in
dealing with him she was dealing with the bank, the find-
ing would have been amply justified by the evidence and no
court would think of setting it aside as without support.

Indeed we think it very probable from the record that
while the motion to direct a verdict was sustained generally
the decisive consideration in the mind of the trial court was
the defendant's claim of prior adjudication.
In this, we think there was error. When
plaintiff dismissed her claim and intervention based on the
notes, that demand was withdrawn from the controversy
and from the jurisdiction of the court, and the second count
stood alone the same as if the former had never been pre-
sented or filed. A judgment thereafter rendered upon the
remaining count was no adjudication of the one which had
been withdrawn unless the two were identical in character
or substance or the former was so included in the latter that
the determination of the one necessarily disposed of the
other. In other words, to apply the rule of *res judicata*
there must be a substantial identity of issues. The only
issue tried in the intervention proceedings was the plaintiff's
claim to recover upon the implied contract to return the sum
of $2,000 deposited with the bank by the hand of Tim
Lemon. The bank expressly admitted having received the
money, but pleaded the issuance therefor of a certificate of
deposit which it alleged had been paid. The payment re-
lied upon consisted in the turning out to plaintiff in lieu
of her money the notes now in controversy. It is obvious
at a glance that this defense may have been found complete,
without in any manner affecting plaintiff's right thereafter
to assert a claim for the conversion of the notes thus turned
out to her.

If A. sues B. to recover the agreed purchase price of
a horse and B. answers admitting the purchase but alleg-

2. SAME: *res judicata.*

ing that thereafter he turned out to A. the promissory note of a third person in full payment of the debt and upon the issue thus tendered, B. recovers judgment for costs, there is nothing in the doctrine of *res judicata* which precludes A. from thereafter suing and recovering judgment against B. for a conversion of such note or of the proceeds of its collection. In the trial of the intervention proceedings against the receiver, the one question considered and decided was whether these four notes had been in fact accepted by the plaintiff in lieu of the money. Whether Utterback was acting in that matter for the bank or simply as the agent of plaintiff; or whether such notes were still in the possession of the bank or had been actually delivered to her or otherwise properly accounted for, was an inquiry the answer to which was in no manner essential to the issue then being tried nor was it submitted for the finding of the jury. In our judgment the plea of former adjudication is not available to the appellee upon the record before us. *Delany v. Reade,* 4 Iowa, 292; *Griffin v. Seymour,* 15 Iowa, 30; *Fairfield v. McNany,* 37 Iowa, 75; *Shirland v. Bank,* 65 Iowa, 99; *Kern v. Wilson,* 82 Iowa, 407; *Bank v. School Dist.,* 115 Wis. 622 (92 N. W. 439); *Bond v. Markstrum,* 102 Mich. 11 (60 N. W. 282); *State v. Cooley,* 58 Minn. 514 (60 N. W. 338). It is well settled that a voluntary dismissal of an action or claim is not an adjudication. *Weyand v. Railroad,* 75 Iowa, 573; *Parks v. Dunlap,* 86 Cal. 189 (25 Pac. 916); *Jones v. Graham,* 36 Ark. 383.

In argument in this court appellee appears to rely upon the claims made in the intervention proceedings by plaintiff as an election of remedies, by which she waived or lost her right to maintain the present action. In order that the doctrine of election of remedies may apply it must appear that assuming the truth of the matters alleged by the plaintiff there were two or more inconsistent remedies open to her choice. Under such circumstances the choice of one would negative the right to pur-

3. ELECTION OF REMEDIES.

sue the other. *Redhead v. Cattle Co.,* 126 Iowa, 410; *Zimmerman v. Robinson,* 128 Iowa, 72. But no such alternative was presented to the appellant. It was on the theory that appellee was indebted to her upon the deposit made for her by Tim Lemon that she prosecuted the intervention, but it was there found and determined that the debt sued upon had been extinguished by the transfer to her of certain promissory notes. Accepting the result of that adjudication which found the ownership of the notes to be in her, she now sues alleging that the notes thus turned out to her were placed or left in the hands of the appellee for her use and that appellee has collected them and refuses to account for the proceeds. If the defendant to a suit upon a promissory note successfully defends the action upon the theory and claim that he has given the plaintiff another note in full payment and satisfaction of the one in suit, it would seem farcical to say that when sued upon the second note he may rely upon the doctrine of *res judicata* or of election of remedies to relieve him from liability.

For equally good and persuasive reasons there is no room to apply either rule to the case at bar. The mere fact that a plaintiff has been unsuccessful in attempting to enforce a remedy which he mistakenly believed to be applicable has never been held to be an adjudication or an election which will prevent his invoking the proper remedy. *Kingsbury v. Kettle,* 90 Mich. 476 (51 N. W. 541); *Smith v. Bricker,* 86 Iowa, 285 (53 N. W. 250); *In re Van Norman,* 41 Minn. 494 (43 N. W. 334); Zimmerman v. Robinson, *supra.* In the last-cited case this court had occasion to consider the subject and after a general review of the authorities we reached a conclusion in harmony with the position here taken by the appellant. In the language of the Supreme Court of California " if plaintiff was mistaken and undertook to avail herself of a remedy she was never entitled to, this does not prevent her from subsequently availing herself of a remedy to which she is entitled

under the facts of the case." . . . "No case has been called to my attention, nor do I believe any can be found which holds that a person is estopped from pursuing a remedy that he is entitled to because he has attempted to avail himself of a remedy that he was never entitled to." *Agar v. Winslow,* 123 Cal. 587 (56 Pac. 422, 69 Am. St. Rep. 84). This proposition is affirmed in numerous cases, many of which are noted in the opinion in the Zimmerman case. We are satisfied with the rule there approved and think its application to the present appeal necessitates a reversal of the judgment appealed from. None of our cases relied upon by the appellee are inconsistent with this conclusion.

It should also be said that the matters set up in the second count of the petition in the present case were in no manner involved or included in either count of the petition of intervention and for reasons already stated the motion to direct a verdict in defendant's favor on that count should have been overruled.

The contention of appellee that the cashier had no authority to receive notes, and make collections thereon is not well founded. We know of nothing in the statute or in the common law of banking which thus limits the power of the bank or of the cashier. It is a matter of common knowledge and observation that by far the greater bulk of the collection business of the country is transacted by banks. They are constantly receiving the notes, bonds and securities of their customers and collecting the interest and principal thereof, and the announcement that a bank is in no manner responsible when moneys so received are stolen or embezzled by its cashier or other managing officer would excite profound consternation in the business world. The rule of *ultra vires* is one which the courts always apply with caution if not hesitation. *Hawkes v. Eastern, etc.,* 1 De G., M. & G. 760. And if there be any doubt in the matter it is always resolved against the plea.

4. Ultra vires.

There is but one material disputed fact in the case. Did plaintiff in the matters now in controversy deal with Utterback as cashier and representative of the bank or did she deal with him as her personal agent and representative? In other words, was she doing business with the bank through Utterback as cashier or was she entrusting her business to Utterback personally? This question as we have already said was clearly one for the jury. Other questions suggested in argument are not likely to arise on a retrial, and we need not consider them. For the reasons stated a new trial must be ordered.

The judgment of the district court is *reversed*.