STATE OF MINNESOTA *ex rel.* H. G. TRACY *vs.* CLAYTON R. COOLEY,
. County Auditor.

Argued Oct. 8, 1894.　Reversed Oct. 19, 1894.

No. 9106.

**Pleading in Mandamus may now be on information and belief.**

Denials on information and belief, and affirmative allegations in the same form, are permissible and sufficient in the return to a writ of mandamus.

**Dissolution of a school district a bar to the claim to be a de facto district.**

Where a school-district organization was legally dissolved by the acts of the voters of the district under Laws 1885, ch. 170, such fact may be alleged in the return to a writ of mandamus as a defense or bar to the claim of right on the part of the pretended or *de facto* school-district treasurer of such district to draw school money from the county treasury.

**When the claim of res judicata will apply.**

The rule of res judicata cannot be invoked in a second action unless upon the same claim or demand.

Appeal by Clayton R. Cooley, county auditor of Hennepin County, from an order of the District Court of that county, *Robert D. Russell,* J., made May 24, 1894, directing a peremptory *mandamus* to issue.

On May 10, 1894, H. G. Tracy presented his petition to the District Court stating that he is a resident freeholder and legal voter in the Independent School District of Minneapolis Park in that county. That he is president and William Radzom treasurer of the Board of Education of that district. That Clayton R. Cooley is county auditor of that county and on March preceding apportioned to the district $106.12 of the public school moneys. That Radzom asked him for an order on the county treasurer for that sum but was refused. The petition further stated that on January 10, 1894, Cooley in like manner refused to give Radzom an order for $75.05 apportioned to the district in October, 1893. That an alternative writ of mandamus was obtained and served on him and to which he

made no return, and on January 29, 1894, a peremptory writ issued commanding him to give a warrant for the last mentioned sum and he obeyed and made return that he had given it. The relator prayed that another alternative writ issue to Cooley to make and deliver a warrant for the $106.12, or show cause May 19, 1894, at the opening of court at the court house why he refuses and why a peremptory writ should not issue.

Cooley appeared and made return on information and belief that Independent School District of Minneapolis Park had been dissolved. That the granting of the former writ of January 29, 1894, was by mistake unopposed. He further returned on information and belief that Independent School District of Minneapolis Park was never legally organized, that an organization was attempted in April, 1892, but was ineffectual and that at an election held April 11, 1893, the village of Minneapolis Park was dissolved by vote of the inhabitants and with it the Independent School District.

Upon filing this return the trial court, thinking it insufficient in law and as showing no cause, ordered a peremptory writ to issue. From that order the county auditor appeals.

*Wilson & Van Derlip*, for appellant.

Under 1878 G. S. ch. 36, § 76, the county auditor is required in March and October of each year to apportion among the various school districts in his county certain public funds. Upon the order of the county auditor the county treasurer is required to pay to the treasurer of each school district the money in his hands apportioned thereto (§ 84.) The general school laws not inconsistent with the special provisions relating to independent districts apply to such districts (§ 115.)

By Laws 1885, ch. 170, any independent school district may dissolve its organization at any election held in such district in the same manner as nearly as may be as elections are held for the purpose of organizing independent school districts; provided, that such school district shall only be dissolved when two thirds of the legal voters voting at any such election shall cast their ballots in favor of dissolving the same.

The only question is as to the sufficiency of the return to present an issue calling for a trial upon the merits. In modern practice a

proceeding by *mandamus* in cases where it is applicable, is nothing more than an ordinary action in respect of its issues and their trial. 1878 G. S. ch. 80, §§ 8, 9, 14; *State ex rel.* v. *Weld*, 39 Minn. 426; *State ex rel.* v. *Minneapolis & St. L. Ry. Co.*, 39 Minn. 219; *State ex rel.* v. *Town of Lake*, 28 Minn. 362; *State ex rel.* v. *Ames*, 31 Minn. 440; *Commonwealth of Kentucky* v. *Dennison*, 24 How. 66; *Commercial Bank* v. *Canal Com'rs.*, 10 Wend. 25.

The motion for a peremptory writ of *mandamus* upon the pleadings. was equivalent to a demurrer to the return, and the matters therein alleged must be assumed to be true and the motion must be determined upon them; if, upon those allegations, the relator was not entitled to a peremptory writ, the order appealed from must be reversed. *Clark* v. *Buchanan*, 2 Minn. 346; *Baker* v. *Marshal*, 15 Minn. 177; *Merrill* v. *Gladwin*, 61 Mich. 95.

*Savage & Purdy*, for respondent.

Denials on information and belief are not admissible in a return on *mandamus*. All denials, as well as affirmative allegations, in such a return must be direct and positive, and made in unqualified terms. *People ex rel.* v. *Supervisors*, 53 Hun. 254; *People ex rel.* v. *Assessors*, 52 How. Pr. 140; *People ex rel.* v. *Common Council*, 77 N. Y. 503; *Canova* v. *Commissioners*, 18 Fla. 512; *Levy* v. *Inglish*, 4 Ark. 65; *State ex rel.* v. *Trammel*, 106 Mo. 510; *Commonwealth ex rel.* v. *Commissioners*, 32 Pa. St. 218.

There can be no question that the ordinary modes of pleading and verification have come to be a farce as to furnishing any sanction for their truth; and the reasons for permitting issues so to be raised in private controversies do not hold in this kind of cases which have to do with the public service. *Sansom* v. *Mercer*, 68 Tex. 488; *People ex rel.* v. *Norton*, 12 Abb. Pr. N. S. 47; *People* v. *Collins*, 7 Johns. 549.

The relator is one of the qualified electors of the school district and a proper party to set this proceeding in motion. *Union Pac. R. Co.* v. *Hall*, 91 U. S. 343; *People* v. *Collins*, 19 Wend. 56; *People* v. *Halsey*, 37 N. Y. 344; *Attorney General* v. *Boston*, 123 Mass.

460; *State ex rel.* v. *Weld,* 39 Minn. 426; *State ex rel.* v. *Archibald,* 43 Minn. 328; *Todd* v. *Rustad,* 43 Minn. 500.

The auditor cannot decline to recognize the legally accredited officer of the *de facto* school district, nor raise in any such way a controversy as to its legal existence. *Wilcox* v. *Smith,* 5 Wend. 231; *State* v. *Rich,* 20 Mo. 393; *Parker* v. *Supervisors,* 4 Minn. 59; *Burt* v. *Winona & St. P. R. Co.,* 31 Minn. 472.

The only way in which the validity of this organization can be tested is by a direct proceeding instituted by the attorney general. *State ex rel.* v. *Tracy,* 48 Minn. 497; *State* v. *Parker,* 25 Minn. 215; *State* v. *Bradford,* 32 Vt. 50; *People* v. *Carpenter,* 24 N. Y. 86.

Any usurpation of a public office or unlawful exercise of municipal corporate functions is a public wrong. Like other public wrongs it should be redressed by public authority, and in accordance with this idea our statute commits and entrusts the authority to institute and conduct proceedings of this kind solely to the attorney general. *State ex rel.* v. *Williams,* 25 Minn. 340; *Mead* v. *Treasurer,* 36 Mich. 416; *State* v. *John,* 81 Mo. 13; *McGee* v. *State,* 103 Ind. 444.

Even could the auditor on general principles make the contest which he attempts to make in this case, he is concluded by the former adjudication in the prior *mandamus* proceeding.

The principle of *res judicata* applies equally to *mandamus* proceedings as to any other final determination. *Louis* v. *Brown Tp.,* 109 U. S. 162; *Santa Cruz Gap T. Co.* v. *S. Clara Co.,* 62 Cal. 40; *State ex rel.* v. *Trammel,* 106 Mo. 510; *State ex rel.* v. *Hard,* 25 Minn. 460; *Doyle* v. *Hallam,* 21 Minn. 515; *Barton* v. *Anderson,* 104 Ind. 578; *Nemetty* v. *Naylor,* 100 N. Y. 562.

BUCK, J. The relator, H. G. Tracy, claiming to be the President of the Board of Education of Independent School District of Minneapolis Park, in the county of Hennepin, petitioned the District Court of said county for a writ of mandamus to compel Clayton R. Cooley, the county auditor of said county, to make, issue, and deliver to one William Radzom an order upon the county treasurer of said county for the sum of $106.12, alleging in said petition that said Radzom was the treasurer of said school district, and also alleging that said county auditor had in the month of March, 1894, appor-

tioned to said school district the said sum of $106.12. The petition was verified May 9, 1894, and on May 10th the District Court made an order for the issuance of an alternative writ of mandamus requiring said county auditor to issue such order, or show cause why he had not done so. The alternative writ was allowed, and the defendant made a return thereto, admitting some of the allegations in the writ, denying other allegations, and upon information and belief alleged various matters as an affirmative defense.

1. The respondent contends that denials upon information and belief are not permissible in a return to a writ of mandamus, especially when made by a county officer having no personal interest in the controversy. Several of the allegations in the return which are pleaded as an affirmative defense are stated upon information and belief. If this form of pleading is permitted, it seems to us that a public officer should certainly be allowed to do so. Many facts might exist, and transactions take place, of which he could not have the means of knowing personally or positively, and to which he in no way was a party, and of which it would be difficult for him to obtain a positive knowledge, especially without spending much time for such purpose, and which might greatly interfere with the faithful discharge of his official duties. He might be informed of such alleged facts or transactions which he believed to be true, and it would seem to be unjust that he should be deprived, through some technicalities or mere matter of form, from alleging their existence upon information and belief. Whatever may have been the forms of the proceedings at common law, in the case of an application for a writ of mandamus, is quite immaterial, as our statute now provides that no other pleading or written allegation is allowed than the writ and answer. They shall be construed and amended in the same manner as pleadings in a civil action, and issues thereby joined shall be tried, and further proceedings had, as in a civil action. 1878, G. S. ch. 80, § 9. The principal reason for the common-law rule that the denials or affirmations in a return on mandamus must be positive, and not on information and belief, was that such return was conclusive, and could not be traversed. But, under our statute, this reason no longer exists,—a fact which accounts for the change in the rules of pleading. Our statute does not expressly prohibit the pleader from inserting, in his pleadings, allegations upon information and belief.

It requires that the complaint shall contain a plain and concise statement of the facts constituting a cause of action without unnecessary repetition, and that the answer of the defendant shall contain—

*First,* a denial of each allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief;

*Second,* a statement of any new matter constituting a defense or counterclaim, in ordinary and concise language, without repetition. 1878, G. S. ch. 66, §§ 91, 96.

Now, the matters stated in the answer upon information and belief are intended as a defense to the allegations in the writ. The existence and materiality of the facts so stated are pleaded and brought home to the notice of the relator, even though alleged upon information and belief. The law requires good faith on the part of the pleader, and an accurate statement of the facts may be alleged under an allegation upon information and belief. The attorneys for the respondents say in their brief "that there can be no question that the ordinary modes of pleading and verification have come to be a farce as to furnishing any sanction for their truth," and yet they insist that a public officer, by reason of the position he holds, should be compelled to deny positively the controverted allegations of the complaint, or allege positively the matters constituting a defense.

We do not feel disposed to sanction or uphold this doctrine, for we are of the opinion that substantial justice can be done by allowing the necessary allegations of the answer to be made upon information and belief. A conscientious and honest man or public officer should not be deprived of his substantial rights because he feels that he can only truthfully allege the existence of certain facts, substantiating those rights upon information and belief. However sincerely he may believe in the existence of such facts, yet, not knowing with absolute certainty of their existence, he should be permitted to allege such facts upon information and belief, and not be driven out of court because he would not utter a falsehood or commit perjury. Under this rule there will be less untruthful verifications, and not so much of a farce, in the verification of pleadings, as complained of by counsel.

With the great amount of litigation that is constantly arising throughout the country, the merits of the case should not be sacri-. ficed to mere forms. If the allegations of a pleading are so indefi- nite or uncertain that the nature of the charge or defense is not ap- parent, the court may strike them out on motion, or compel the party to make them more certain by amendment, or, if sham or irrel- evant, they may also be stricken out.

The principal question in a pleading is as to whether it is correct in substance, and not merely in form. In the construction of plead- ings for the purpose of determining their effect, their allegations are to be liberally construed, with a view to substantial justice be- tween the parties. 1878, G. S. ch. 66, § 106. The court is required, in every stage of an action, to disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment can be reversed or affected by reason of such error or defect. Id. § 127.

The statute also provides for the verification of pleadings; that is, all pleadings may be verified, and, when any pleading is verified, all subsequent pleadings shall also be verified. The verification shall be to the effect that the same is true to the knowledge of the person making it, except as to those matters stated on information and belief, and, as to those matters, that he believes it to be true. Id. § 104.

This language is not confined merely to the denials in the answer of the controverted allegations in the complaint, but applies to all pleadings, including matters stated in the complaint on informa- tion and belief. Why else should the party be required or allowed to verify the matters stated in the complaint upon information and belief, unless he is allowed to insert such matters in that form? Evidently, this section of the statute contemplates that such allega- tion may be inserted in any of the pleadings; and we believe that such has been the usual practice in this state ever since its admis- sion into the Union, in 1858. It would be a great misfortune for us now to declare that practice invalid, and we refuse so to do. See *Howell* v. *Fraser*, 1 N. Y. Code Rep. 270, and *Fry* v. *Bennett*, Id. 238.

2. We now come to another phase of this case. If it appears that for more than one year prior to July 5, 1893, this alleged school dis-

-trict had exercised the privileges and franchises of school districts, and that therefore it would be conclusively presumed to have been legally established, yet it appears that on said day, at an election duly held for the purpose, more than two-thirds of the legal voters of the· district cast their ballots in favor of the dissolution of such district, as provided by Laws 1885, ch. 170. The general rule is that, to test the legal existence of the organization of a school district, the proceeding must be on information by writ of quo warranto, and that mandamus is not the proper remedy. But a different question is presented ˙here for our consideration. There are no acts alleged of irregularity, illegality, or want of jurisdiction in the organization of the district upon which its legal existence depended prior to July 5, 1893, and it must therefore be conceded to have been a regularly organized school district at that time.

But the *status* of the case, as here presented, justifies us in assuming that the district was legally dissolved by the action of a sufficient number of voters at an election held for that purpose on that day. If, so, then after that date it ceased to be a legally organized school district; and even if, after that date, it had performed all of the acts necessary to constitute it a *de facto* school-district organization, yet as it had not been acting in that capacity for one year after July 1, 1893, and before the filing of the petition in· this case, there is no presumption of law that it was a legal school-district organization. Therefore, if Radzom was pretending to act as the legal or *de facto* treasurer of said district, yet his authority to do so is expressly negatived by the fact that he was not the treasurer of any legal school-district organization. This appearing, he had no legal right to act as the treasurer *de facto* or *de jure* of the district. And, this being so, the relator does not show himself entitled to this kind of relief, for the law is well settled "that *mandamus* will not be granted unless the applicant has a clear legal right, and the officer is subject to a clear legal duty, so that if either appears to be doubtful the court will refuse the writ or discharge it, if it has been issued." Throop, Pub. Off. p. 779.

It is contended that the dissolution or the nonexistence of the district cannot be questioned by the defendant in a proceeding of this kind.

As we have stated, a proceeding to test the validity of the organi-- zation of a school district presents quite a different question from one to test the authority of a person claiming to act as an officer under authority, where its dissolution has been legally effected. Suppose it had been dissolved by a direct proceeding by writ of *quo warranto;* would not that fact have been a bar to this petitioner's claim for the writ of *mandamus?* And is not the dissolution of the district by express legislative authority just as effectual, legal, and complete in one case as in the other? When is this depletion of the county treasury to cease? What remedy has a taxpayer to resist an attempt by a pretended officer of a defunct school district to keep up an annual raid on the school funds of the state, if this proceeding is allowed or permitted by the courts? The attorney general, who represents the state in actions of this kind, might not feel disposed to test the existence of a school-district organization which was already legally dissolved by express authority of the law of 1885. In fact, such a proceeding upon his part would be futile. In this matter, that he does not intend to do so is plainly evident from the fact that he has sanctioned the bringing of this proceeding, conceding, as we do, that it is brought in the utmost good faith. But to hold that the pretended officer of a defunct or dissolved school-district organization can still continue to discharge the duties of such office, and to draw school money from the county treasury for the purpose of paying its debts, would be the establishment of a most pernicious and dangerous precedent, and we refuse to do so. The county auditor was therefore fully justified in not issuing an order upon the county treasurer of his county for the payment to said Radzom, as treasurer of said district, of the said sum of $106.12, so far, at least, as this point in the case is concerned.

3. The only remaining question for our consideration is this: Was the defendant concluded by the former adjudication in the prior *mandamus* proceedings? Conceding that the principles of *res judicata* may be applied equally to a *mandamus* proceeding as to any other final determination, we are compelled to examine the issues and causes of action tendered in the former proceedings, and to see whether they were identically or substantially the same. The parties to the former *mandamus* proceeding were the same as in this action.

In that case the relator herein, some time in the month of January, 1894, applied to the District Court for the issuance of a writ of *mandamus* to compel this defendant to make and deliver to said Radzom, as treasurer of said school district, an order upon the county treasurer of the county of Hennepin for the sum of $75.05, which it is alleged the defendant had in the month of October, 1893, apportioned to said school district. Through a mistake or misunderstanding with his attorneys the defendant neglected to answer or make return to the writ of mandamus, or appear in any manner, and thereupon a peremptory writ of mandamus was issued against defendant for the payment of said sum of $75.05.

This proceeding is for the purpose of obtaining a writ to compel the defendant to make and deliver to said Radzom an order upon the county treasurer for an entirely different sum, viz. $106.12, and which it is alleged was apportioned by this defendant to said district at a different time, viz. in the month of March, 1894. In the former proceedings there was no issue tendered as to the liability of the defendant to make the order for the payment of $106.12, and there was no controversy over the amount of $75.05. The court, therefore, did not pass upon the question of the defendant's liability to issue the order for the $106.12, for that cause or subject-matter was not embraced within the writ. In the case of *Adams* v. *Adams,* 25 Minn. 72, this court held that a judgment by default upon one of several negotiable promissory notes founded upon one and the same illegal consideration, no issue upon the fact of consideration being tendered by the complaint, does not estop the defendant from setting up in a second action, upon another of said notes, the defense of illegality of consideration. If the illegality of the consideration could be set up in that case, we do not see why the dissolution of the school district cannot be pleaded in this action, and thus show the illegality of the plaintiff's cause of action. There the illegal consideration for all of the notes existed when the action upon the first note was commenced, and judgment rendered thereon. So here the school district was not legally existing at the time of the issuance of the former writ, nor when the alternative writ was issued in this case, nor at the present time. There one note constituted one cause of action, the other note another cause of action, and there having been no issue tendered, or adjudication as to the illegal considera-

tion for the first note, the proceeding did not constitute a bar to the action upon the second note. We do not feel disposed to modify or change the rule laid down in *Adams* v. *Adams, supra,* for the practical application of that doctrine frequently operates equitably, and prevents the failure of justice, and we concur in that decision. The application of this rule in this case is a good illustration of this doctrine. Here the public treasury is threatened by the demand for the payment of money for an illegal purpose. We say illegal, for we can hardly conceive of a purpose more so than one where the common-school fund of the state is sought to be paid to the pretended treasurer of a dissolved school-district organization. The county auditor, in addition to the misunderstanding referred to, may have had doubts about the propriety or necessity of paying the former sum of $75.05, and thus paid it to save the expense of litigation; but, when a second attempt is thus made, he finds, and finds truly, that it is his official and imperative duty to interpose all the just and legal defenses known to the law. The considerations for not interposing a defense in the first action may be various, as stated by Judge Field in the case of *Cromwell* v. *Sac Co.,* 94 U. S., on page 356, viz.: "Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defense in one action which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting, in a subsequent action, other demands arising out of the same transaction. A judgment by default only admits, for the purpose of the action, the legality of the demand or claim in suit; it does not make the allegations of the declaration or complaint evidence in an action upon a different claim." In this case the county auditor might well have hesitated in the first instance as to the propriety or necessity of answering or making a return when he considered that the suit was brought by the highest law officer of the state, and against the defendant as a public officer. Whether his neglect to answer in the prior proceeding was commendable or not, we are of the opinion that he should not be precluded from setting up a defense in this action be-

cause he did not, under the circumstances, avail himself of the opportunity of setting it up in the prior action.

Judge Field, in his opinion in the case last above cited, uses this language: "But, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. In all other cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." See, also, 1 Freem. Judgm. p. 453.

We are of the opinion, therefore, that the prior mandamus proceedings or alleged former adjudication do not constitute a bar to the defendant's right to avail himself of the defense interposed herein by his answer.

The order appealed from is therefore reversed.

(Opinion published 60 N. W. 338.)