## STATE EX REL. ISIDOR ZIEN v. CITY OF DULUTH AND OTHERS.[1]

November 3, 1916.

Nos. 20,172—(21).

**Mandamus — issue of liquor license:**

1. Mandamus will not lie to control or restrict the discretion given to a city council in respect to the issuance of a liquor license, but in the present case it sufficiently appears that the license was refused solely because its issuance had been prohibited by an ordinance adopted under the initiative provisions of the city charter, and not in the exercise of the discretion reposed in the council.

**Same — allegations upon information and belief.**

2. Where it is obvious that the reason for the action of the council is

[1]Reported in 159 N. W. 792.

Note.—For authorities passing upon the question of right of court by *mandamus* to control decision of licensing officers as to fitness of applicant for license to sell intoxicating liquors, see note in 27 L.R.A.(N.S.) 1195.

not within the personal knowledge of the relator, he may allege such reason upon information and belief.

**Municipal corporation — sale of intoxicating liquor — right to prohibit.**

3. The power to prohibit the sale of intoxicating liquor within its limits may be given to a city by its charter. The general laws regulating the liquor traffic imposed regulations and restrictions more stringent than those theretofore existing, which the municipalities of the state could not abrogate or lessen; but such municipalities were free to impose any further restrictions authorized by their respective charters or other laws.

**Public policy — power to prohibit liquor traffic.**

4. It is not contrary to the public policy of the state to give the power to prohibit such traffic to a city of the first class, and such power may be given to a city of that class by a home rule charter.

**City of Duluth — "all municipal power" construed.**

5. The former charter of the city of Duluth limited the control of the city over the liquor traffic so that the city could regulate but not prohibit such traffic; but the present charter, after continuing in force all powers previously possessed by the city, granted, in addition thereto, "all municipal power of every name and nature whatsoever." *Held* that "all municipal power" includes all powers generally recognized as powers which may properly be exercised by municipal corporations and that the liquor traffic may be prohibited under the grant of such power.

**Constitutional requirement not violated.**

6. The constitutional requirement that the charter shall provide a legislative body for the city, is not violated by conferring the power of the initiative and referendum upon the electors of the city after establishing such legislative body.

**Ordinance valid.**

7. The ordinance is valid so far as it prohibits the sale of intoxicating liquor at retail, and, as relator seeks a license to sell at retail only, whether the ordinance is valid so far as it prohibits sales at wholesale is not involved herein.

Upon the relation of Isidor Zien, the district court for St. Louis county granted its alternative writ of *mandamus*, directing defendant city and the members of its council to grant the application of relator for a license to sell intoxicating liquor at a specified place. From an order, Dancer, J., sustaining defendants' demurrer to relator's petition and granting their motion to quash the writ, relator appealed. Affirmed.

*Abbott, MacPherran, Lewis & Gilbert,* for appellant.

*John E. Samuelson, Leonard McHugh* and *M. T. O'Donnell,* for respondent.

TAYLOR, C.

The city of Duluth is a city of the first class, and is governed by a home rule charter, adopted in 1913, which among other things confers upon the electors of the city the powers commonly designated as the initiative and referendum. Acting under these provisions of the charter the electors of the city, in June, 1916, adopted an ordinance prohibiting the sale of intoxicating liquor within the city and forbidding the issuance of licenses for the sale of such liquor. Thereafter the relator, asserting that this ordinance was invalid and of no effect, applied to the city council for a license to sell intoxicating liquor at retail. His application was denied and thereupon he procured an alternative writ of *mandamus* to compel the issuance of the license. The defendants demurred to the petition and made a motion to quash the writ. The trial court discharged the writ on the ground that the ordinance was valid and prohibited the issuance of the license. The relator appealed.

1. At the outset defendants contend that even if the ordinance be void, granting or refusing a license rested in the discretion of the city council, and that *mandamus* will not lie to compel its issuance. It is true that the council, in the exercise of its discretion, may refuse to issue a license and that the court will not, by *mandamus* or otherwise, control or restrict the exercise of such discretion. Consequently it was incumbent upon the relator to show affirmatively that the city council did not exercise any of its discretionary power in denying his application. The relator recognized that this burden rested upon him, and in his petition, and also in the alternative writ, set forth facts showing that all the conditions precedent to the issuance of the license had been complied with, and further that he was informed and believed and alleged the fact to be "that the sole and only reason" for rejecting his application was because the issuance of such licenses had been prohibited by the above mentioned ordinance. The objection made to this allegation is that it is based on information and belief. It appears that the records of the council do not disclose the reason for their action, and the relator could not well

make oath truthfully that he knew the reason for such action of his own knowledge. We think that under such circumstances the form here adopted is proper, and consider the allegation sufficient both in form and substance. State v. Cooley, 58 Minn. 514, 60 N. W. 338.

2. Relator contends that the power to prohibit the sale of intoxicating liquor has never been given to the city of Duluth, and that the ordinance prohibiting the sale of such liquor is void for lack of power to adopt it. It is true that there is no general law conferring such power upon the city. The legislature, by general laws, has conferred upon towns, villages, cities of the fourth class, and counties the power to determine for themselves whether the sale of intoxicating liquor shall be permitted within such municipalities; but has never enacted any general law conferring such power upon cities of the first, second or third class. As there is no general law conferring such power upon the city of Duluth, whether the city may entirely prohibit the sale of intoxicating liquor within its limits depends upon whether the power to do so has been conferred upon it by its charter. That such power may be given to a city by its charter is too well settled to be the subject of controversy. Relator contends, however, that the legislature, by enacting the so-called high license laws (found in their present form in chapter 16 of the general statutes of 1913), assumed control of the liquor traffic on behalf of the state, and thereby withdrew the power to control such traffic from the subordinate municipalities of the state; and, by enacting general laws regulating such traffic everywhere, without empowering cities of the first, second and third class to prohibit such traffic therein, established as the public policy of the state that such traffic should be regulated but not prohibited within such cities. And he further contends that as the Constitution requires home rule charters to be in harmony with the laws of the state, such charters must conform to the public policy of the state; and that it follows therefrom that the home rule charter of the city of Duluth cannot confer upon that city the power to prohibit entirely the sale of intoxicating liquor therein. We cannot sustain his contention that conferring power upon cities of the first, second and third class to prohibit the sale of intoxicating liquor is contrary to the public policy of the state. The general laws regulating the liquor traffic did not wholly divest the municipalities of the state of power to regulate and control such traffic within

such municipalities; but prescribed regulations and restrictions more stringent than those theretofore existing, and took from all municipalities the power to abrogate or lessen the regulations and restrictions so prescribed. The various municipalities remained free, however, to impose any additional regulations and restrictions authorized by their respective charters or other laws. While they could not relieve the traffic from the restrictions imposed by the legislature they still retained whatever power had been conferred upon them to restrict it still further. Evans v. City of Redwood Falls, 103 Minn. 314, 115 N. W. 200; City of Mankato v. Olger, 126 Minn. 521, 148 N. W. 471. Originally the sale of intoxicating liquor was lawful everywhere and none of the municipalities of the state possessed the power to prohibit its sale; but the legislature granted local option to towns in 1875, to villages in 1885, to various cities governed by special charters at different times, to all cities of the fourth class in 1913, and to counties in 1915. From the beginning of the state to the present time the trend of legislation in respect to the liquor traffic has been to increase the restrictions placed thereon and to grant and extend the privilege of local option. And we hold that extending such privilege to cities not previously possessing it in no way way contravenes the public policy of the state as determined by its prior legislation; and that a city of the first, second or third class which adopts a home rule charter under the legislative power conferred upon it by the Constitution and laws may provide therein that such city may determine for itself whether the sale of intoxicating liquor shall be prohibited within its borders.

3. Relator further contends that even if the power to prohibit the sale of intoxicating liquor may be given to a city of the first class by a home rule charter, yet the charter in question does not confer such power. This charter differs from the usual form of city charters in that the powers granted are conferred by general provisions only, and that it makes no attempt to enumerate or set forth in detail the specific powers which the city may exercise. The grant of power is as follows: "Save as herein otherwise provided and save as prohibited by the Constitution or statutes of the state of Minnesota, it shall have and exercise all powers, functions, rights and privileges possessed by the city of Duluth prior to the adoption of this charter; also all powers, functions, rights and privileges now or hereafter given or granted to municipal corpora-

tions of the first class having 'home rule charters' by the Constitution and laws of the state of Minnesota; also all powers, functions, rights and privileges usually exercised by, or which are incidental to, or inhere in, municipal corporations of like power and degree; also all municipal power, functions, rights, privileges and immunities of every name and nature whatsoever; and in addition, it shall have all the powers, and be subject to the restrictions contained in this charter." The power to prohibit the sale of intoxicating liquor was not conferred by the first clause, for it is conceded that the city did not possess such power prior to the adoption of the present charter. It is not conferred by the second or third clauses, for there is no general law granting such power to cities of the first class, and it has not been exercised by, and is not incidental to, and does not inhere in, such cities. The fourth clause grants "all municipal power" of every kind and nature whatsoever. What is meant by "all municipal power" is not defined, but as here used the expression is obviously broad enough to include all those powers which are generally recognized as powers which may properly be given to and be exercised by municipal corporations. That it is generally recognized that the power to prohibit the liquor traffic within their respective territorial limits may properly be conferred upon and be exercised by the subordinate municipalities of the state, is evidenced by the uniform trend of legislation and of judicial decisions both in this state and elsewhere; and we think that the grant of "all municipal power" of every name and nature whatsoever conferred the power to prohibit the liquor traffic, unless the limitations found in the former charter still preclude the city from prohibiting such traffic as claimed by the relator.

The former charter contained the usual general welfare clause followed by the usual enumeration of the specific powers which the city might exercise to accomplish the purposes set forth in the welfare clause. It contained substantially the same restriction which was held in State v. Hammond, 40 Minn. 43, 41 N. W. 243, to expressly limit the general grant of power contained in the welfare clause so that the city could exercise only those powers specifically enumerated and set forth. It gave specific power to regulate the liquor traffic but not to prohibit such traffic; consequently it did not confer the power to prohibit. Relator contends that, because the present charter continued in force all powers previously possessed

by the city the power of the city to control the liquor traffic is still subject to the same limitations placed upon it by the former charter. If the power of the city over such traffic rests wholly upon the former charter, relator's position is well taken. Merely continuing in force the powers already possessed did not change nor enlarge such powers; but it was clearly competent for the present charter to continue such powers in force and also to grant other powers, including the power to prohibit the liquor traffic, in addition thereto. If the present charter evinces the intention that the city shall not only exercise the powers possessed under the former charter but shall also, in addition thereto, exercise the powers conferred by general grants in the present charter, the limitations placed by the former charter upon the powers conferred thereunder will not apply to such general grants of additional power contained in the present charter. Green v. Eastern Ry. Co. of Minn. 52 Minn. 79, 53 N. W. 808; Village of Fairmont v. Meyer, 83 Minn. 456, 86 N. W. 457.

Save as otherwise provided, the present charter confers all powers previously possessed by the city; also all powers now or hereafter granted by the Constitution and laws to cities of the first class having home rule charters; also all powers usually exercised by, or which are incidental to, or inhere in, cities of like power and degree; also all municipal power of every name and nature whatsoever. While each successive grant of power covers and includes, to a greater or less extent, the powers conferred by the preceding grants, it is obvious from the context that each successive grant was made for the purpose of adding additional powers to those already conferred, and not for the purpose of lessening or limiting the powers conferred by such preceding grants. Furthermore, if the restrictions placed by the former charter upon the general grant of power contained therein were to be construed as precluding the city from exercising, under the general grants of power contained in the present charter, any powers except those specifically set forth in such former charter, it would render the express general grants of power, which follow the grant conferring upon the city all power previously possessed by it, meaningless and of no effect. The insertion of these additional provisions clearly evinced the intention that the city should possess and exercise powers thereunder not conferred by the former charter, and this inten-

tion must be given effect. It follows that the city possessed the power to prohibit the sale of intoxicating liquor within its limits.

4. Relator further contends that cities having home rule charters are prohibited from conferring the power to initiate and adopt ordinances upon the electors of such cities by the following provision of the Constitution: "It shall be a feature of all such charters that there shall be provided, among other things, for a mayor or chief magistrate, and a legislative body of either one or two houses; if of two houses, at least one of them shall be elected by general vote of the electors." [Const. art. 4, § 36].

This provision was under consideration in State v. City of Mankato, 117 Minn. 458, 136 N. W. 264, 41 L.R.A.(N.S.) 111, and the court held that it was not violated by the charter of the city of Mankato, which established the commission form of government in that city and vested executive as well as legislative powers in the legislative body and made the mayor a member of such legislative body, as the court could not say that it clearly prohibited home rule charters from imposing executive duties upon the legislative body, or from imposing legislative duties upon the chief magistrate. The precise point now urged was not discussed specifically in that decision, but the same reasoning which led the court to the conclusion that the Mankato charter, in giving both executive and legislative powers to the same body, did not violate the constitutional requirement, also leads to the conclusion that the Duluth charter, in giving the power of the initiative and referendum to the electors of the city, does not violate such requirement. Requiring a legislative body to be a feature of all home rule charters, does not necessarily mean that no legislative functions can be exercised by any other body. While the legislative body undoubtedly becomes the respository of all legislative power possessed by the city and not expressly given to some other body, we find nothing in the language of the Constitution which requires us to hold that no legislative power can be given to the electors. Pitman v. Drabelle (Mo.) 183 S. W. 1055; Walker v. City of Spokane, 62 Wash. 312, 113 Pac. 775, Ann. Cas. 1912C, 994. The power to initiate and enact local legislation has frequently been given to the electors of different subdivisions of the state, notably by the local option statutes; and as any powers, in harmony with the Constitution and laws, which the legislative power may confer upon

cities, may be conferred thereon by home rule charters, we think that the power of the initiative and referendum may be conferred by such charters. Ex parte Pfahler, 150 Cal. 71, 88 Pac. 270, 11 L.R.A.(N.S.) 1092, 11 Ann. Cas. 911; Eckerson v. City of Des Moines, 137 Iowa, 452, 115 N. W. 177; Pitman v. Drabelle (Mo.), 183 S. W. 1055; Hartig v. Seattle, 53 Wash. 432, 102 Pac. 408.

5. Relator further contends that the ordinance is void because it not only prohibits the sale of liquor at retail but also at wholesale, and relies upon State v. Sullivan, 117 Minn. 329, 135 N. W. 748, as sustaining his contention. That case held that the power to license and regulate the sale of intoxicating liquor, granted to the city of East Grand Forks, did not authorize that city to impose a license upon the business of selling intoxicating liquor at wholesale, but only upon the business of selling it at retail. Even if the city of Duluth had no power to prohibit the sale of intoxicating liquor at wholesale, it at least had power to prohibit the sale of such liquor at retail, and the ordinance is valid at least insofar as it prohibits such sales at retail. As the relator asks for a license to sell at retail only, the question whether the ordinance is invalid insofar as it prohibits sales at wholesale is not involved in this case.

Order affirmed.