# MINNEAPOLIS-HONEYWELL REGULATOR COMPANY v. CARL NADASDY AND OTHERS. GOLDEN VALLEY AREA DEVELOPMENT ASSOCIATION AND OTHERS, INTERVENORS.

76 N. W. (2d) 670.

April 20, 1956—No. 36,937.

*Stanley D. Kane,* for appellants.

*Henry Halladay* and *Dorsey, Owen, Barker, Scott & Barber,* for plaintiff-respondent.

*Donald R. Bundlie* and *Diessner, Wurst & Bundlie,* for intervenors-respondents.

DELL, CHIEF JUSTICE.

This is an appeal from an order and also the judgment of the District Court of Hennepin County granting a peremptory writ of mandamus.

The facts are not in dispute. On September 20, 1955, the village council of Golden Valley adopted a comprehensive zoning code in which the tract of land involved in the instant case, consisting of approximately 105 acres, was included within a district classified as "open development." An ordinance altering and amending the zoning code was adopted by the village council on February 7, 1956. Under the amendment the tract here involved was rezoned and established as an "industrial zoning district."

Prior to February 7, 1956, plaintiff acquired and paid for certain options giving it the right, until April 30, 1956, to purchase this tract of land. If not exercised by that date, the plaintiff was to forfeit the price paid for said options.

On February 17, 1956, a petition, which it is claimed was authorized under M. S. A. 462.01 and signed by the number of freeholders required by that statute, was filed with the village clerk. The petition sought to have the February 7 amendment to the zoning code submitted to the voters of the municipality for their approval, which right it was claimed was provided for under the provisions of § 462.01. On February 23, 1956, the plaintiff applied for a building permit authorizing the construction of an industrial building on the tract in question and submitted along with its application appropriate plans of the project as well as a certified check in the sum of $4,601.15 in payment of the permit fee. On that same day, at a meeting of the village council, a resolution was passed setting forth that, even though the application was in proper form and complied with the building and zoning codes of the village, the application had to be and was denied because the council was in doubt as to its right to grant the building permit in view of the referendum petition filed with the village clerk on February 17.

Thereafter, on petition of the plaintiff, an alternative writ of mandamus was issued by the District Court of Hennepin County directed to the village of Golden Valley, its mayor, trustees, village clerk and chief building inspector, and commercial building inspector, as defendants, ordering them to issue a building permit to the plaintiff or to show cause why that should not be done. Defendants

answered and requested that the alternative writ of mandamus be dismissed. The Golden Valley Area Development Association and Emery C. Swanson, John H. Sullivan, and Joe D. Perkins, Jr., individually and as officers of said association, thereupon moved for leave to intervene as defendants, which motion was granted. The intervenors answered demanding that the writ be quashed and the petition denied. The district court, after a hearing, ordered that a peremptory writ of mandamus be issued directed to the defendants commanding them to issue a building permit to the plaintiff in accordance with its application for such permit as filed with the village council. Judgment having been so entered, this appeal by defendants followed.

■ The intervenors contend that under the circumstances of this case mandamus was not the proper remedy with which to compel the municipality to issue the building permit. We do not agree with this contention. Here the sole ground upon which the village council based its refusal to grant the permit was its doubt as to its right to grant such a permit due to the fact that a referendum petition, purportedly authorized under § 462.01, had been filed within the period specified by that statute. It is well established that mandamus will not lie to control the exercise of discretion of municipalities and other governmental bodies or boards having the duty of making decisions involving judgment and discretion.[1] However, in the instant case, if the referendum petition authorized under § 462.01 does not apply to amendments or alterations to a zoning ordinance, then the refusal of the village council was not based on a sound discretionary reason but, rather, was predicated on an invalid ground and one not warranted by law. In other cases similar to the instant case, we have held that mandamus was the proper remedy to compel the issuance of a building permit or license.[2]

[1] State ex rel. Gopher Sales Co. v. City of Austin, 246 Minn. 514, 75 N. W. (2d) 780; M. S. A. 586.01.

[2] See State ex rel. Lewis v. City Council of Minneapolis, 140 Minn. 433, 434, 168 N. W. 188, where this court stated: "Mandamus will not lie to control the discretion of the common council of a city and if the refusal to approve was in any sense an exercise of the discretionary power of the

The intervenors contend that mandamus will not lie in this case because there was another proper, speedy, and adequate remedy at law available,[3] namely, certiorari. In support of their position they cite Zion E. L. Church v. City of Detroit Lakes, 221 Minn. 55, 21 N. W. (2d) 203, in which this court affirmed an order sustaining a demurrer to an alternative writ of mandamus. There we held that, on its face, the reason given by the city council for the denial of the building permit, namely that if it were granted it would increase the automobile traffic hazard, was substantial. The decision in that case, however, turned solely on the narrow question of the sufficiency of the petition for, and the alternative writ of, mandamus and is by no means controlling of the instant case.[4]

council the writ must be quashed. If, on the other hand, the refusal was purely arbitrary or was predicated on a ground not warranted by law, the council is subject to direction by the court and mandamus should issue"; State ex rel. Kintzinger v. Houghton, 159 Minn. 478, 199 N. W. 100 (building permit was refused solely because of an erroneous interpretation placed upon a statute; held that mandamus should have been granted to compel the issuance of the building permit) ; Meyers v. Houghton, 137 Minn. 481, 163 N. W. 754 (building permit refused solely because of an incorrect interpretation placed upon a city ordinance; held that judgment of district court quashing writ of mandamus should be reversed) ; State ex rel. Zien v. City of Duluth, 134 Minn. 355, 159 N. W. 792 (relator claimed that his application for a liquor license was denied solely because its issuance was purported to be prohibited under an ordinance which he claimed was void and not because of the discretion reposed in the council; this court indicated that mandamus was the proper remedy but held that the questioned ordinance was valid and, therefore, affirmed the decision of the lower court quashing the writ of mandamus) ; Riesenfeld, Bauman & Maxwell, *Extraordinary Remedies*, 33 Minn. L. Rev. 569, 592 to 595.

[3]M. S. A. 586.02. "The writ shall issue on the information of the party beneficially interested, but it shall not issue in any case where there is a plain, speedy, and adequate remedy in the ordinary course of law."

[4]It is doubtful if certiorari, which was suggested as an adequate remedy in the Zion E. L. Church case, would prove to be an adequate and speedy remedy in the instant case. In State ex rel. Spurck v. Civil Service Board, 226 Minn. 240, 252, 32 N. W. (2d) 574, 582, a case involving the petitioner's civil service classification, this court stated: "While the court *cannot in a certiorari proceeding direct the administrative agency* upon reversal of its

The intervenors further contend that the plans submitted by the plaintiff along with their application were not *final* plans and specifications as required by the ordinances of the village of Golden Valley. It is true that the writ of mandamus will not be granted where it is shown that the petitioner has not complied with the provisions of the statute or ordinance which are conditions precedent to the assertion of the right demanded.[5] Here, however, there was no showing that the plans submitted by the plaintiff did not comply with the village ordinances. To the contrary, Royce W. Owens, village clerk of Golden Valley and chief building inspector of the village, specifically testified that the plans submitted by the plaintiff were sufficient to meet the requirements imposed by the village for the issuance of a building permit. Moreover, in its resolution denying plaintiff's application for a building permit, the village council stated that the application and plans were in proper form and conformed in all respects with the building codes of the village. Its sole and only ground for denying the application was the doubt raised by the filing of the referendum petition. We conclude, therefore, that, if the amending zoning ordinance passed by the council on February 7, 1956, was not suspended by the referendum petition filed under § 462.01, then the council's refusal to grant the permit was not warranted by law and mandamus was the proper remedy to compel the issuance of a building permit to the plaintiff.

■ The basic issue presented by this appeal is whether the referendum-election provision of § 462.01 applies solely to a comprehensive type of zoning ordinance or, as the intervenors contend, applies also to an altering or amending ordinance such as the one involved in the instant case. The statute reads as follows:

---

determination as to the precise course it shall pursue, even though the court's decision is binding upon the agency [citation], *it can by writ of mandamus compel performance of a judicially determined mandatory duty,* * * *." (Italics supplied.)

[5]State ex rel. Ratner v. City of Minneapolis, 164 Minn. 49, 204 N. W. 632; International Harvester Co. v. Elsberg, 197 Minn. 360, 268 N. W. 421; 11 Dunnell, Dig. (3 ed.) § 5756.

"For the purpose of promoting health, safety, order, convenience, prosperity, and general welfare, any city of the third or fourth class or any village in this state, acting by or through its governing body, may by ordinance regulate the location, size, use, and height of buildings, the arrangement of buildings on lots, and the density of population within such city or village; may make different regulations for different districts thereof; and may acquire or prepare and adopt a comprehensive plan for the future physical development and improvement of such city or village, in accordance with the regulations made as aforesaid, and may thereafter alter the regulations or plan, such alterations to be made only by a two-thirds vote of all the members of the governing body of such city or village. After the adoption of an ordinance hereunder and within ten days after its publication such ordinance may be suspended in effect upon the filing of a petition signed by resident freeholders of the municipality in a number equal to not less than ten per cent of the legal voters of the municipality requesting *that the question of permitting the council to zone the city* be submitted to the electors at a general or special election, and the ordinances shall not again become effective until a majority of the electors voting on the question approve the proposition permitting the governing body *to zone the municipality.*" (Italics supplied.)

This statute has remained substantially the same since its enactment in 1929[6] except for the last sentence which prior to 1935 provided that the provisions of the section were not to be made effective "until the proposition of the enactment of such regulations" was *first* submitted to a vote of the legal voters of the municipality and approved by a majority of the electors so voting.[7]

---

[6]L. 1929, c. 176, § 1.

[7]From the time of its enactment in 1929 up to the passage of L. 1935, c. 376, § 1, the last sentence of the present § 462.01 read as follows:

"* * * the provisions of this Act shall not be made effective by the governing body of any such municipality until the proposition of the enactment of such regulations shall be first submitted to a vote of the legal voters of such municipality at a general election in such municipality or at a special election called for the purpose of passing upon the proposition when if a

While the referendum provision of the statute has not heretofore been construed by this court,[8] we believe that the reasonable and proper construction of the statute supports the position of the plaintiff to the effect that the referendum-election provision applies only to a comprehensive type of zoning ordinance and does not apply to an altering or amending ordinance. Following a general statement of the purposes to be promoted through the enactment of a zoning ordinance, the statute specifies the types of zoning ordinances that the governing bodies of the respective cities or villages may enact. This language then follows:

"* * * and may thereafter *alter the regulations or plan,* such alterations to be made *only* by a two-thirds vote of all the members of the governing body of such city or village." (Italics supplied.)

We believe that by the use of this language the legislature manifested an intent that alterations or amendments to zoning ordinances were to be treated differently than the comprehensive types of zoning ordinances themselves.

The legislature obviously recognized the inherent dangers in an unrestricted zoning power and accordingly provided not merely for a simple majority but rather for a two-thirds vote of *all* of the members of the governing body before the municipality's comprehensive zoning plan could be altered or amended. It must not be overlooked that the statute does not require a two-thirds vote of the members of the governing body in order to pass a comprehensive type of zoning ordinance but rather only a simple majority. The logical

---

majority of the electors voting at such election shall vote in favor thereof the governing body may proceed to carry out the regulations authorized by this Act, but not otherwise."

[8]In Gunderson v. Anderson, 190 Minn. 245, 247, 251 N. W. 515, 516, while the court was not there faced with the precise issue which is before us in the instant case, § 462.01, as it originally read, was referred to as follows:

"L. 1929, c. 176, Mason Minn. St. 1931 Supp. §§ 1933-42 to 1933-45, approved April 12 of that year, authorized cities of the second, third, and fourth class to *adopt zoning ordinances* if so authorized at an election held for that purpose." (Italics supplied.)

explanation for this difference would seem to be that this comprehensive type of zoning ordinance may be suspended upon the filing of a referendum petition meeting the requirements of the last sentence of § 462.01 and "shall not again become effective until a majority of the electors voting on the question approve the proposition permitting the governing body to zone the municipality." Thus, the voters of the municipality are assured of the right to approve or disapprove such an ordinance passed by a simple majority of their governing body provided such a petition is duly filed.

However, the strongest factor indicating that the referendum provision was meant to apply only to the comprehensive type of zoning ordinance is the very language of the statute itself as used in the sentence providing for the referendum petition and election. It is there provided that the "ordinance may be suspended * * * upon the filing of a petition * * * requesting that *the question of permitting the council to zone the city* be submitted to the electors at a general or special election, * * *." (Italics supplied.) The statute further provides that a majority of the electors voting on the question must approve the proposition *"permitting the governing body to zone the municipality"* (italics supplied) before the ordinance shall again become effective. It is to be noted that the sole and only question which the electors are permitted to vote upon is the question of the approval or disapproval of the proposition of permitting the governing body to zone the municipality. Nowhere in the sentence containing the referendum provision is reference made to an alteration or amendment to a zoning ordinance. It is not unreasonable to assume that, if the legislature had intended to include alterations or amendments to zoning ordinances within the scope of the referendum provision, it would have clearly so provided.[9] We can attribute

---

[9]The reasonableness of this interpretation placed on § 462.01 is further indicated by an examination of §§ 366.10 to 366.18, which deal with the zoning powers of town boards. There, extensive provisions are set out regarding the right of the town boards to *adopt* building and zoning regulations and restrictions. Section 366.10 provides that the board of supervisors of any town is "authorized and empowered to submit to the legal voters of the town for their approval or rejection at any annual town meet-

no other meaning to the above-quoted explicit language than that the referendum provision applies only to the comprehensive type of zoning ordinance.[10]

The intervenors argue that this interpretation will enable a village or city council to circumvent the referendum provisions specified in § 462.01 by first passing a noncontroversial zoning ordinance and later passing a so-called controversial ordinance which would not be subjected to the referendum provision of § 462.01. It should be noted, however, that the referendum provision as contained in the last sentence of § 462.01 is not concerned with the question of whether or not the ordinance is controversial but rather is directed specifically to the question of whether the council should be permitted to zone the city. While it is no doubt true that the amending ordinance passed by the village council might adversely affect the interest of the owners of property adjoining the proposed site of the plaintiff's building, in that it might tend to reduce the value of such property, it is not at all certain that such a result would follow and, in any event, it is also quite likely that the zoning amendment will prove to be extremely beneficial and in the best interest of the community as a whole. It is undoubtedly characteristic of much legis-

ing or at any special town meeting called for that purpose, the question as to whether or not such board shall adopt building and zoning regulations and restrictions in the town." It should be noted, however, that there the question of amending the zoning regulation is given separate and distinct treatment. Section 366.15 sets out detailed procedure to be followed in those cases where it is desired to *amend* any provisions of the zoning ordinance.

[10]The zoning code of Golden Valley adopted September 20, 1955, specifically gave the village council the right to establish all or any part of the "open development district" as a part of any other district. Section 2.02 of said zoning code reads as follows:

"The Village Council shall from time to time re-examine the zoning of the Village or any part of it and may at any time establish all or any part of the Open Development District as a part of any other District herein, or hereafter established, in accordance with the needs, development and growth pattern of the Village; provided, however, that nothing herein shall be interpreted as prohibiting or preventing the rezoning of any District or part thereof or changing or altering the uses permitted in any District or any part thereof."

lation that it operates, to a greater or lesser degree, more directly upon one group or section of the community than another and yet is not subject to the general approval of the voters through a referendum election. The referendum provision of § 462.01 was, in our opinion, enacted to cover a specific situation, and we cannot read into the statute a requirement that its provisions be extended to include an alteration or amendment to the comprehensive type of zoning ordinance. If there is to be a change in this respect, it must come from the legislature. The order and judgment of the lower court must be affirmed.

Affirmed.