Moses Manston *et al. vs.* Angus McIntosh, County Auditor.

Argued Oct. 15, 1894. Petition denied Oct. 22, 1894.

No. 9256.

**Political mass conventions to nominate candidates.**

By the use of the word "delegate" in Laws 1893, ch. 4, §§ 31, 33 and 34, the Legislature did not intend to prohibit political parties from holding mass conventions for the nomination of candidates for office, or intend to require the members of such conventions to be elected as delegates to such conventions at primaries or caucuses. Buck, J., dissenting.

Petition to this court by Moses Manston, A. A. Kremer, Eugene A. Arnold, W. C. Tyndall and F. Baker, presented October 10, 1894, under Laws 1893, ch. 4, § 43, stating that Angus McIntosh, county

auditor of Itasca county, refuses to place the nominees of a delegate convention of the Republican party for county offices upon the ballots for the general election to be held November 6, 1894.

The petition stated that a mass convention of the Republican voters of Itasca county was held September 1, 1894, at which candidates were nominated for county offices. That petitioners thereafter discovered that nominations could only be made by a delegate convention, and that a delegate convention was then called and was held October 8, 1894, at which other candidates were nominated for said county offices. Certificates of nomination were made and tendered to McIntosh as county auditor with the fees prescribed by the statute, but he refused to receive them claiming that the nominees of the mass convention were the regular nominees of that party and could not be displaced as such by the nominees of the later delegate convention.

An order was made by this court October 10, 1894, upon this petition requiring McIntosh to recognize the later nominees and cause their names to be placed on the ballots and to omit the others, and in default thereof to show cause before this court October 15, 1894, at ten o'clock in the forenoon at the Capitol why he refuses so to do. He appeared on that day and answered, claiming that the mass convention of September 1, 1894, was, under the statute, authorized to act for the Republican party and to name its candidates for county offices, and the question was argued by counsel and submitted.

*Eugene A. Arnold*, and *John P. Rea*, for petitioners.
*Wilson & Van Derlip*, for respondent.

CANTY, J. The petition of Manston and others states that they are residents and voters of Itasca county; that on September 1, 1894, a mass convention of the Republican voters of that county was held for the purpose of nominating candidates for county officers; that the convention met, and nominated such candidates; that Manston, being chairman of the Republican county committee, and believing that such mass meeting was illegal under our statute, called a delegate convention, which was held on the 8th of October, and it also nominated candidates for county offices; that he and some of the other petitioners were nominated for county offices at this last con-

vention, but were not so nominated at the first convention; that the county auditor refused to receive and file their certificates, made by the proper officers of the last convention, and refused to print the names of these candidates on the Australian ballot, but recognized only the certificates made by the officers of the first convention. An order to show cause was thereupon issued under Laws 1893, ch. 4, § 43, to the county auditor and other parties interested, who filed an answer alleging that the mass convention was held according to the regularly established usage of the party in that county; that it and all the political parties in that county have, ever since its organization, nominated county officers in mass conventions.

Laws 1893, ch. 4, §§ 31, 33 and 34, read as follows:

"Sec. 31. Any assembly or convention of delegates, held for the purpose of making nominations to public office, or electors to the number hereinafter specified, may nominate candidates for public office, to be filled by election within the state. Said nomination shall be made by delivering to and leaving with the officer charged by this act with directing the printing of the ballots upon which the name is to be placed, within the time prescribed by this act, a certificate of nomination for each candidate."

"Sec. 33. The certificate of nomination of a candidate for office selected by any convention of delegates, as herein defined, shall be signed and certified by the presiding officer and secretary of said convention, who shall also take and prescribe an oath before some proper officer that the facts stated in the certificate are true, and the secretary shall immediately deliver such certificate of nomination to the officer charged with directing the printing of the ballots, upon which the name is to be placed, and in case he shall neglect to do so he shall be guilty of a misdemeanor.

"Sec. 34. An assembly or convention of delegates within the meaning of this act, is an organized assemblage of delegates representing a political party, which at the last general election before the holding of such convention or assembly polled at least one per cent. of the entire vote cast in the state, or county or other division or district for which the nomination is made."

It is contended by the petitioners that under these sections the law does not recognize any convention but a delegate convention,—

that is, a convention of delegates chosen at primaries or caucuses, and sent to the nominating convention,—and that the certificates of nomination made by a mass convention, where every voter represents himself and himself only, cannot, under the law, be recognized by the officer whose duty it is to prepare and print the Australian ballot; that a "delegate" is "a person sent and empowered to act for another; one deputed to represent another." We admit that, if we are to give the word "delegate," where used in these sections, its strict, literal, and technical meaning, the contention of the petitioners must prevail. But it seems to us that this would be giving the word a meaning never contemplated by the Legislature, and would be wholly contrary to the spirit and intent of the election law. If there was a single section in this act, or even a single line, by which it was clearly intended to regulate the manner in which political parties should proceed in organizing conventions or making nominations, this interpretation would perhaps not be warranted; but there is a total absence of anything of the kind in this act, except what may be found in the use of the word "delegate" in these three sections.

Taking into consideration the history of legislation in this state, we are of the opinion that the Legislature did not intend, by this election law, to interfere with the manner of organizing political conventions, so long as they were regularly organized according to the usage of the party. As one instance in such history it may be stated that by Laws 1887, ch. 4, §§ 100–104, the Legislature prescribed certain regulations to prevent fraud and caucus packing at primary elections, but by Laws 1891, ch. 4, § 128, these sections were expressly repealed. Under all the circumstances, it seems to us that the Legislature used the word "delegate" in the present law in a more popular but less accurate sense, as meaning a regularly selected member of a regular party convention. It has long been the practice, in several of the thinly settled counties of this state, to hold mass conventions, and the Legislature had no object in suppressing this practice, and did not intend to do so.

It is not a new doctrine which interprets a statute according to its spirit and intent, though that be contrary to its strict technical letter. "The intention of the Legislature should always be followed whenever it can be discovered, although the construction seems con-

trary to the letter of the statute." *Grimes* v. *Bryne*, 2 Minn. 89, 106 (Gil. 72), cited and approved in *Barker* v. *Kelderhouse*, 8 Minn. 207, 211 (Gil. 178). See, also, Sedg. St. Const. (2d Ed.) 255, and note a.

The petition should be denied. So ordered.

(Oct. 31, 1894.)

Buck, J. (dissenting).    This is a contest between Republican candidates for county offices in Itasca county, one set being the nominees of a mass convention, and some of the others claiming to be candidates of a delegate convention.    The petitioners allege that the mass convention was composed of a howling, lawless mob, irrespective of party, and that the Republican party, at said mass convention, was overcome by persons other than Republicans, all of which is denied in the return to the order to show cause.

The petitioners are residents and voters of Itasca county; and September 1, 1894, a mass convention of Republican voters in that county held a convention for the purpose of nominating various candidates for county offices, one of the petitioners, Manston, being chairman of the Republican county committee, and one Arnold secretary, selected as such at a mass convention of Republican voters held about two years before.    The mass convention held September 1, 1894, nominated candidates for the various county offices, and the county auditor received the certificates of the presiding officers, and intended putting them upon the official ballots as the legal nominees. Afterwards, Manston, as chairman of the Republican county committee, and Arnold, as secretary, deeming the mass convention illegal, called a delegate convention of Republican voters of said county.    It is alleged in the petition that Manston and Arnold supposed that a mass convention was a legal compliance with the law, but that, immediately upon discovering their mistake, they called a delegate convention, as above referred to.    The petition alleges "that immediately upon the discovery of said mistake being made in the call and holding of said mass, nondelegate convention, as aforesaid, said chairman, Manston, and secretary, Arnold, in good faith, and pursuant to the orders and direction of said county committee, made due call and advertisement of a regular convention of an organized assemblage of delegates of the Republican party of said county to be held in said county October 8, 1894; and at said delegate con-

vention said party of said county was duly, equitably, uniformly represented by delegations or delegates from the different political subdivisions of said organized county of Itasca, and from the whole of said county of Itasca. Accordingly, said delegates were selected by a regularly called caucus of the Republican voters of each election district." The contest is between the nominees of the different Republican conventions, as to which set are the lawful nominees. The latter claiming to be the legal ones, petitioned that, as such, their names be put upon the official ballots.

The opinion rendered by a majority of this court holds that the nominees of the mass convention were the legal nominees, notwithstanding that candidates were subsequently nominated at a delegate convention. The reasoning by which this conclusion is reached is that, taking the various statutes of 1887, 1891, and 1893 into consideration, the words "mass convention" should be construed as equivalent to the words "delegate convention," especially in view of the fact that it was the established usage of the political parties of the county of Itasca to nominate county officers in mass convention. The following language is found in the majority opinion, viz.: "Taking into consideration the history of legislation in this state, we are of the opinion that the Legislature did not intend by this election law to interfere with the manner of organizing political conventions so long as they were regularly organized according to the usage of the party. * * * It has long been the practice in several of the thinly-settled counties of this state to hold mass conventions, and the Legislature had no object in suppressing this practice, and did not intend to do so."

Just where the legislative authority exists for passing a general election law which authorizes the holding of a mass convention of the voters in a thinly-settled county, and a delegate convention in a thickly-settled county, I am not advised, either by counsel, the records of the case, or by the majority opinion; and such authority may be doubted, unless I concede, as some modern statesmen claim, that the legislative power is omnipotent, and its knowledge boundless. As I do not find in the law books or elsewhere any definition of just what constitutes a thinly-settled county, so that mass conventions can there be held, and be legally designated "delegate conventions," I suppose that it is intended by the majority opinion to take

judicial notice of what are and what are not thinly-settled counties in the state, and that the county of Itasca is one of the latter. Whatever force or weakness there may be in this contention, it is respectfully suggested that the usage as to holding mass conventions for nominating candidates for office is not applicable to this case. I shall not deny the proposition that doubtful words in a general statute may be explained by reference to a long-continued general usage, but this interpretation or construction of statutes is subject to the well-known elementary law that no usage is good which conflicts with the well-established rules of law, nor can it subvert or control any plain statutory enactment, however long continued such usage may have existed. Even if long-continued usage could be invoked in this case at any time, it certainly ceased to be of avail, for by the laws of 1887 it was specially provided that political primary elections shall be held as therein provided, under severe penalties for a violation. Upon the passage of that law, all usage ceased to have any force, by virtue of this positive statutory enactment, and this was in force until April 20, 1891,—a period of four years. As there was no election in the year 1891, the only usage which could possibly be invoked as a basis for construing the statute in the manner found in the language of the majority opinion must be the usage of 1892. I do not think that holding one mass convention in 1892 would establish a usage which should give it a legal recognition as such. The law of 1891, relative to elections, and which repealed the law of 1887, retained the sections in regard to delegate conventions; and they were retained in the election law of 1893. The sections of that law, as far as applicable, are §§ 31, 33, 34, set out in the majority opinion, together with § 35, which is as follows:

"Sec. 35. The certificate of nomination of a candidate selected otherwise than by a convention of delegates shall be signed by the electors resident within the district or political division from which the candidate is presented, to a number equal to one per cent of the entire vote cast at the last preceding election in the state, county or other political division or district from which the nomination is made."

This is the recognized and acknowledged law, and has been such ever since June 1, 1891. Do these sections need any party usage to enable a court to construe or interpret them? Have these sec-

tions any of the characteristics which demand interpretation from the judiciary of this state? I know that usage is sometimes "the stuff of which law is made"; but we need no light from the uncertainties of usage to guide our judicial pathway, especially where there are plain statutory provisions which enable us to see clearly the well-understood meaning of words and phrases.

"Where the language is transparent, there is no room for the office of construction. There should be no construction where there is nothing to construe." Anderson, Law Dict. p. 240. It certainly is not the rule to construe a law that is well understood. Construction or interpretation is only demanded where the law is uncertain, ambiguous, and difficult in its application. This is not.

It seems to me that it is a dangerous doctrine to hold that a local usage in the county of Itasca can be construed to control a general election law applicable to a whole state. There might be a different usage in different counties in reference to the method of administering this election law, and, after a few years, the law itself would be so torn, battered, and left in shreds that it would be difficult to find its spirit, intent, or letter. A general law should not be construed by usage as applicable to one county, and not to another. The usage of wrongfully cutting pine timber in some thinly-settled counties, which has existed for more than thirty years, may yet be claimed to have the force of law, unless we pause in this method of statutory construction.

It is said in the majority opinion that "it is not a new doctrine which interprets a statute according to its spirit and intent, though that be contrary to its technical letter; that the intention of the Legislature should always be followed whenever it can be discovered, although the construction seems contrary to the letter of the statute." This rule of construction has no application to this case, and the construction is an arbitrary enlargement of the meaning of the law itself. What is the spirit and letter of this law before us? Is it to provide a mass convention when it expressly provides for a delegate convention? Why hunt for the intent and spirit of the law when it has no hidden meaning? What are the words and phrases which justify this majority opinion in invoking this rule of construction? It is bending and twisting words from their well-understood meaning. It is not construction, but

destruction. It subverts the meaning of the law. The letter, the spirit, and intent of the law agree. What is meant is written in the law. It provided for a delegate convention. It did not provide for a mass convention, and it is not idle declamation to say so. The language of the law is: "An assembly or convention of delegates within the meaning of this act is an organized assemblage of delegates." Do these words need any judicial construction, any infused spirit and intent, to let the people know their meaning? A "delegate" is one deputed, empowered, intrusted, sent to act for or represent another. It is in the nature of a trust. Delegates are generally selected for their experience, skill, honesty, and discretion. They represent a body of the people, within the meaning of this statute. An individual in a mass convention represents nobody but himself. I confess to an utter inability to understand or comprehend how a mass convention is the same as a delegate convention, within the meaning of the law. Our statute provides a rule for construction where one is necessary (1878, G. S. ch. 4, § 1), as follows: "Words and phrases shall be construed according to the common and approved usage of the language." The common and approved usage of the words "delegate convention" and "mass convention" are well understood even by those unlearned in the law.

Conceding that the nomination of the mass convention was orderly, yet its proceedings in nominating candidates was a palpable disregard of the requirements of the law. This is not a case where great public interests are to be protected, or human rights secured, by the construction given the law by this court, and which I fear may be hereafter claimed as a sort of precedent for negligence, and one which in the coming years may return to annoy and perplex us very materially. If a "mass convention" can be construed to mean a "delegate convention," then lexicographers will have to add a new definition to their dictionaries.

I greatly regret that my view of the law compels me to dissent, and, if there were any doubt in my mind upon the proper construction to be given to the law, I would concur in the majority opinion, at least by my silence. My opinion may be of but little consequence in this case, but I am not insensible to the weakening force which sometimes arises by reason of judgments being rendered by a divided court, as well as by the conflicting opinion of different courts; but as

I wholly disapprove of the construction placed upon the law, and the reasoning by which it is sought to be maintained, I am compelled to make this dissent.

I think that the prayer of the petition should have been granted.

(Opinion published 60 N. W. 672.)