# THE STATE OF NORTH DAKOTA ON THE RELATION OF OLGER B. BURTNESS v. THOMAS HALL as Secretary of State of the State of North Dakota.

## Two Cases.

(163 N. W. 1055.)

**Party candidates — nomination of — primary elections — special elections — delegate conventions — repeal of laws.**

1. Chapter 109 of the Session Laws of 1907, which provides for the nomination of party candidates for various public offices at primary elections, and declares that for special elections for the offices therein enumerated nominations shall be made as otherwise provided by law; and which concludes with a repeal clause, repealing all conflicting laws in so far as they relate to the provisions of the Primary Election Act,—does not repeal § 498 of the Revised Codes of 1899 nor its cognate sections, authorizing party nominations for public offices in delegate conventions, in so far as those sections are applicable to the making of nominations for offices to be filled at special elections.

**Legislature — political parties — perpetuation of — party candidates — public offices — nomination — by parties — delegate convention.**

2. Where the legislature, for the avowed purpose of securing the "perpetuation of the political parties," provides for the selection of party candidates for public office by popular vote, and by express enactment retains as a part of the machinery for placing candidates upon the general election ballot, a section

of the statute (Rev. Codes 1899, § 501) authorizing the making of individual nominations by groups of electors independent of party affiliations, it is not to be assumed that the legislature thereby intended to preclude party nominations for elections to which the primary law is expressly declared to be inapplicable.

**Primary Election Law — precinct committeemen — original functions — preserved.**

3. The Primary Election Law, which authorizes the direct election of precinct committeemen, and which directs how the regular party organization shall be effected, contemplates that all of the original functions previously exercised by party committeemen shall devolve upon the committeemen organized in conformity with the Primary Election Law.

**Secretary of state — nominations — certified by — to county auditors — special elections.**

4. Section 974, Compiled Laws of 1913, which directs the secretary of state to certify nominations to county auditors not less than thirty days before an election, construed and *held* applicable to special elections.

**Australian Ballot Law — elections — general and special — applicable — legislative regulation — appropriate subjects — exception in law.**

5. Where a proviso contained in one section of a chapter, the whole of which constitutes the Australian Ballot Law, which is applicable to both general and special elections, excepts the provisions of the particular section from applying to special elections; and where the other sections of the chapter deal with subjects appropriate for legislative regulation of special elections as well as general elections, the exception is not to be read into the other provisions of the chapter.

**Secretary of state — ministerial functions — special election — nominating certificate — statutory time in which to file — mandamus — writ of.**

6. Where, after the secretary of state has performed all of his ministerial functions in connection with a special election, demands are made upon him, requiring that he file a nomination certificate after the statutory time for filing the same has elapsed, that he make changes in the form of the ballot such as would necessitate the cancelation of individual nominations after the statutory time has elapsed for withdrawing a nomination, and which would require him to honor the choice as to position on the ballot of a candidate having two nominations after the time for the exercise of an option has expired, a writ of mandamus will not issue to compel compliance with the demands.

**Party committee — power of — to fill vacancies — election ballot — original nomination by — cannot make.**

7. The power of a party committee to fill vacancies on an election ballot, under §§ 977 and 978, Comp. Laws 1913, can be exercised where a vacancy occurs after a regular nomination, but not to make an original nomination.

Opinion filed July 9, 1917.

Original proceeding on writ of mandamus and injunction on the relation of Olger B. Burtness, plaintiff.

Writ and injunctional relief denied.

*William Langer*, Attorney General, and *H. A. Bronson*, Assistant Attorney General, and *William Lemke*, as *amicus curiæ* for defendant.

*B. F. Spalding, R. M. Pollock, A. W. Fowler, J. B. Wineman*, and *Fred T. Cuthbert*, for plaintiff.

BIRDZELL, J. This is an application for a writ of mandamus directed to the secretary of state, compelling him to insert the name of Olger Burtness in the Republican column on the ballot to be used at a special election to fill a vacancy in the office of Congressman from the first congressional district of this state. Accompanying the application a petition was presented asking that the secretary of state be enjoined and restrained from causing the names of Charles W. Plain, Fred T. Cuthbert, and H. G. Vick to be certified or printed upon the ballot in any form or place. Both applications having been made in the interest of Burtness as the nominee of the Republican convention, they may properly be considered together. The facts appearing in the affidavits in support of the petitions and in the returns to the order to show cause are as follows: During the month of April, 1917, a vacancy occurred in the office of representative in Congress from the first congressional district of North Dakota, occasioned by the death of H. T. Helgesen, who had represented the district for some time prior thereto. Thereafter, on the 20th day of June, 1917, a delegate convention was held for the purpose of nominating a Republican candidate to fill such vacancy. On the 25th day of May, 1917, the governor called a special election for the purpose of filling the vacancy, setting the date for the election the 10th day of July, 1917. In the governor's proclamation calling the election it was stated that nominations should be made under the provisions of § 501 of the Political Code of 1899, wherein provision is made for making nominations by petition. After the issuance of the proclamation, and more than thirty days prior to the date set for the election, petitions were filed with the secretary of state on behalf of Olger B. Burtness, Charles W. Plain, Fred T. Cuthbert, H. G. Vick, John Baer, and two other persons who are not concerned in this application, each petition bearing the signatures of the requisite number of

electors to place the petitioner in nomination for the office of member of Congress. To each petition except the Baer petition was added, over the signature of the nominee, the request that his name be printed upon the election ballot, as provided by law, as a candidate for said office, and as a representative of the Republican party. On the 20th of June, a Republican delegate convention was held in the city of Grand Forks, resulting in the choice of the petitioner, Olger B. Burtness, as the nominee of the convention. On June 21st, Plain, Cuthbert, and Vick notified the secretary of state of the withdrawal of their respective names as candidates for the office, and each requested and demanded that his name be not certified or printed on the election ballot. The convention nomination of Burtness was duly certified to the secretary of state, and a formal request was also made by the nominee for the printing of his name in the Republican column. This request, after reciting both the convention nomination and the individual nomination, designated the Republican column as that in which the candidate desired his name to appear upon the ballot, and requested publication in that column, and not in the column under individual nominations. Upon the refusal of the secretary of state to comply with these various requests, and upon his refusal to recognize the convention certificate of nomination as entitling the convention nominee to have his name appear in the Republican column solely and exclusively, the petitions herein were filed, asking for the relief above indicated. In the defendant's return, it appears that he had, on the 12th day of June, issued certificates of nomination to each of the candidates nominated by petition as hereinabove set forth, and that on the same day he had duly certified such nominations to the county auditors in the district wherein the election was called. The foregoing statement comprises all the facts which are deemed by us to be material to a determination of the questions raised upon this application.

The chief questions raised and discussed upon the argument in this court on June 26th related: First, to the legality of the delegate convention method of nominating a candidate for election at a special election to fill a vacancy; second, to the regularity of the proceedings had in calling and holding the convention; third, to the applicability of certain sections of the election laws to special elections, particularly those

sections relating to the duties of the secretary of state in certifying· nominations and indicating the form of the ballots.

The attorney general contends that, since the adoption of the primary law, no convention may be held for the purpose of making party nominations to fill any office. He argues that § 24 of chapter 109, Sess. Laws 1907, this being the Primary Election Law, operates to repeal entirely those provisions of the statutes which formerly sanctioned the caucus-convention system as a method of making party nominations and continuing the party organization. He fortifies the argument by emphasizing the intent and spirit of the Primary Election Law as compared with pre-existing nominating machinery, and also by specific reference to § 34, chapter 109, Sess. Laws 1907, which expressly preserves § 501 of the Revised Codes of 1899 as a part of the election machinery to be coexistent with the primary election system. This argument is untenable. Section 2 of the Primary Election Law (Sess. Laws 1907, § 2, chap. 109), concludes with the following sentence: "For special elections for the officers enumerated herein [this includes members of Congress] the nominations shall be made as otherwise provided by law." The repeal section of the same chapter (§ 41) reads as follows: "All acts and parts of acts in conflict with the provisions of this act are hereby repealed, *in so far as they relate to the provisions of this act.*" Section 34 is as follows: "Nothing herein contained shall be construed as repealing or being in conflict with § 501 of the Revised Codes of 1905 [1899]." From the language above quoted from the various sections of the Primary Election Law, it is quite apparent that the legislative assembly refrained from making any provision for choosing by the primary election method party nominees for offices to be filled at special elections, and it is equally apparent that it intended that such nominations should be made as otherwise provided by law.

At the time of the adoption of the primary law other methods were provided for making nominations at special elections. According to these methods party nominees could be selected in party conventions and individual nominations could be made by petition or in mass conventions. The fact that the primary law itself makes express provision for continuing in force other existing methods for the making of individual nominations, while, at the same time, providing that nominations preceding special elections may be made as otherwise provided by law, is

a strong indication that the legislature desired to continue the then existing method of making party nominations for special elections.   Section 501, Revised Codes of 1899, provides for the making of individual nominations, *not* party nominations, and it is not inconsistent with the primary law as applied to regular primary elections.   The legislature has very properly determined that the two methods may coexist.   The primary election is substituted for the convention as a means of securing party representation upon the general election ballot, and those who do not care to vote for any candidate who represents a party upon the general election ballot are given the right, regardless of party, to nominate an adherent of their principles who may run as an individual nominee.   It has been established by adjudications in our sister states that nominations under sections similar to § 501, Rev. Codes 1899, are not entitled to be considered as party nominations.   Phillips v. Curtis, 4 Idaho, 193, 38 Pac. 405; State ex rel. Woody v. Rotwitt, 18 Mont. 502, 46 Pac. 370;; Atkeson v. Lay, 115 Mo. 538, 22 S. W. 481; McCrary, Elections, § 702.

It is true that the supreme court of Minnesota, however, yielding to a custom of making party nominations in sparsely settled counties in mass conventions, has held that the nominees of mass conventions, properly called and held in obedience to such custom for the purpose of placing in nomination candidates to represent a party, were entitled to recognition on the general election ballot as the representatives of such party. See Manston v. McIntosh, 58 Minn. 525, 28 L.R.A. 605, 60 N. W. 672. But such holding in no way detracts from the general rule that the primary purpose of sections similar to § 501, Rev. Codes 1899, which is an integral part of the Australian Ballot Law, is to secure to the electors the right to have the names of candidates placed upon the ballot to represent principles other than those advanced by regular party representatives.   We can see nothing in the section of the primary law, which merely continues in force the method according to which individual nominations may be made, that in any way conflicts with the right of the adherents of a political party to secure proper recognition for the party on the general election ballot.   Bearing in mind that the repeal clause of the Primary Election Law only purports to repeal conflicting acts in so far as they relate to the provisions of the primary law, and that the law itself expressly excepts its provisions from special elec-

tions, there can be nothing in the primary law to operate as a repeal by implication of the pre-existing laws, providing other means of securing party representation upon a special election ballot. Were this not clear from a reading of the act itself, and from the considerations hereinbefore referred to in this opinion, an additional cogent reason for an interpretation such as we have adopted would seem to lend assurance to the views expressed. Unless pre-existing methods for making party nominations at special elections continue in force, political parties are entirely precluded from representation upon such special election ballot, and this by the operation of a law that was avowedly designed to *perpetuate* as well as purify political parties. See the title of chapter 109, Sess. Laws 1907. The argument of the attorney general mainly resolves itself into an argument for the implied repeal of the pre-existing caucus convention method on account of the radically different policy evinced by the adoption of the primary law, and in this connection the argument is made that the Primary Election Law even provides in detail for the perpetuation of party committees by the direct election of precinct committeemen at the primary election. It is true that the primary election system does differ radically from the delegate convention system, and it cannot be disputed that the delegate convention system is entirely supplanted so far as regular elections are concerned. But, in view of the express exception in § 2 of the Primary Election Law, and in view, further, of the considerations previously mentioned, this argument can have no effect as to special elections. As to that part of the argument that is drawn from the different methods of constituting the party committees, it confuses function with choice. There can be no doubt that it is no longer competent for electors to choose party committeemen according to methods formerly in vogue, but neither is there any doubt that the legislature contemplated that committeemen, chosen according to the plan of the Primary Election Law, might be called upon to perform the functions ordinarily devolving upon party committeemen in connection with special elections, as well as in connection with general elections. There is but one committee for each party, and special elections do not furnish occasion for changing the personnel of or reconstituting party committees. The Primary Election Law does not recognize new officers for the administration of party affairs; it merely pro-

vides a different method of selecting such officers as experience had demonstrated a need for in handling the affairs of the party.

As to the regularity of the proceedings had in calling and holding the convention, we think little need be said. This, for the reason that, in our opinion, the convention was not held in such time as to entitle the nominee thereof to a place upon the ballot as a party nominee. Furthermore this issue is not directly raised by the pleadings. The executive proclamation calling the election is dated on May 25, 1917, and it fixes the date of the election as July 10, 1917. The validity of the executive act in this connection is not questioned. It determines absolutely for all purposes of this application the date of the election. We are not disposed to consider the effect, from any standpoint, of calling the election for the date named. As to the functions of the state central committeemen, the chairman of the state central committee, and the national committeeman in connection with the calling of the convention, and as to the propriety or the regularity of the call made by the national committeeman in conjunction with certain members of the Republican state central committee of the first congressional district, and of their ignoring the chairman of the state central committee, no question properly calling for a decision is raised. But one convention was held, and no one claims a superior right to represent the Republican party as its convention nominee. Furthermore, this application must necessarily be disposed of adversely to the relator, by considerations wholly apart from the regularity of the convention. This leads us to the third question discussed upon the argument.

Counsel for the relator contend that the statutory provision (Comp. Laws 1913, § 994) regulating elections in general has no application to special elections, so far as time for certifying nominations is concerned. This argument is drawn largely from § 973, Comp. Laws 1913, but in our opinion the language of this section does not warrant so broad a conclusion. This section originally appeared as § 8 of chapter 66, Session Laws of 1891. It then provided that the certificates of nominations to be filed with the secretary of state should be filed not more than sixty days or less than thirty days before the date fixed for the holding of the election, and that the certificates of nomination to be filed with county auditors should be filed not more than sixty days, and not less than twenty days, before the election; and it contained the

proviso that the *section* should not apply to nominations for special elections. It was doubtless the intent of the proviso to enable nominees to file certificates with the county auditor less than twenty days before a special election, and with the secretary of state twenty-five days before a special election, but, in our opinion, it was not intended to remove all limitations as to the time for filing certificates of nomination for special elections. It is significant that the immediately following section (§ 9, chapter 66, Sess. Laws 1891) requires the secretary of state to certify the nominations filed with him not less than twenty-five days (now thirty days) before an election, and there is no proviso excepting this section from operation in connection with special elections. Clearly the proviso of § 8 does not relate to the same subject-matter. That section limits the time for the filing of certificates of nomination with the secretary of state to not less than thirty days, whereas § 9 deals with the certification of nominations by the secretary of state to the county auditors within the minimum period of twenty-five days. Before the proviso can be held to extend to § 9 by implication, it must be shown to relate to the same subject-matter, and that this subject-matter is affected in the same way.

It must be remembered that the sections under discussion are but parts of the original Australian Ballot Law, adopted in 1891, which was intended to apply as a whole to both special and general elections. It makes a radical change from the pre-existing laws on the subject, and it provides in considerable detail for the administration of the system therein inaugurated. It specifies that certain certificates of nomination shall be filed with county auditors and others with the secretary of state. It is specific as to the time for the filing of certificates of nomination and certifying them to other officers whose duty it may be to provide for the printing of the ballots in order that they may be in turn distributed by yet another set of officers. Public notice of nominations is required to be given for a period of ten days, and such notice is peculiarly important as applied to special elections. McCrary, Elections, §§ 182–185. The adoption of counsel's argument would leave special elections absolutely devoid of legislative regulation in regard to many matters covered by the original Australian Ballot Law, which matters are as appropriate subjects of legislative regulation in connection with special elections as with general elections. It would require

us to ignore provisions which the legislature has deemed it wise to adopt in order to regulate a matter clearly and peculiarly within its scope. Instead of reading the exception contained in § 973, Comp. Laws 1913, into every other provision of the election laws, we are impressed that it is more proper to follow the maxim, *"Expressio unius est exclusio alterius."*

In the defendant's return it appears that a certificate, purporting to certify to the nomination of John M. Baer as the nominee of the Republican party, has been presented to the defendant. The certificate purports to be that of the executive committee of the Republican state central committee, and, in support of such nomination of Baer, it is urged that if, in any event, any Republican nomination was proper to be received and filed after the time fixed by statute, such nomination of Baer is the only one that could be recognized. So little argument was advanced in support of this claim that we feel justified in saying that it was not seriously urged. At any rate, it was only presented for consideration in case it should be held that a Republican nominee was entitled to a place on the ballot in the party column. It is clear, however, that neither the executive committee nor the state central committee would have power to make an original nomination. This could only be done by convention, regularly called in accordance with the statutes and the customs and practices of the party, or by primary election, where authorized. The power of party committees to fill a vacancy on the ticket, under §§ 977 and 978, Comp. Laws 1913, is only a power to supply a nomination where one has been made but has since become vacant.

Since, then, the provisions of our Political Code, which make it the ministerial duty of the secretary of state to receive certificates of nomination and to abide by requests of nominees as to the appearance or nonappearance of the names upon the ballots, are equally applicable to special elections and general elections, since the provisions as to the time for doing the various acts required are a proper exercise of legislative control binding upon this court as well as upon the secretary of state, and since the ministerial duties devolving upon the secretary of state in connection with the special election in question had been fully performed before the various requests hereinbefore referred to

were made, it follows that there is no duty devolving upon the defendant which can be enforced by this court.

For the reasons indicated, the mandatory writ and injunctional relief asked for by the relator and plaintiffs are denied, as is also the request made on behalf of defendant for recognition of Baer as the Republican nominee.

GRACE, J. I concur in result.

ROBINSON, J. (concurring specially). This motion does not involve any dollars or cents, nor the right to an office. It is merely a contest for a party label. It is a political motion in which certain parties are sparring for an advantage at a special election for representative in Congress to succeed the late Mr. Helgesen. It is an attempt to resurrect the old political caucus and convention system which has been dead and buried for a score of years.

Pursuant to authority by law vested in the governor on May 25, 1917, he issued a proclamation calling for a special election to be held on July 10, 1917; and in the proclamation it is stated that the nominations of candidates to be voted for shall be made under § 501 of the political Code of 1899, wherein provision is made for nomination by petition, and that the public and election officers take notice and act accordingly.

On May 20, 1917, the secretary of state issued a proclamation reciting that of the governor, and stating that under the ruling of the attorney general nominations must be made by petition, pursuant to § 501 of the Code of 1899, and that all candidates will be required to file their petitions in the office of the secretary of state not less than thirty days prior to the date of the election.

Pursuant to the statute and the proclamation, Olger B. Burtness and several other parties filed certificates of nomination thirty days before the election, and in like manner John M. Baer, of Fargo, filed a certificate of nomination signed by several thousand voters. (Seven thousand it is said to be.) He also filed a certificate of nomination signed by William Lemke and others as the chairman and executive committee of the Republican state central committee. The statute provides that, not less than twenty-five nor more than thirty days before

the election, the secretary of state shall certify to each county auditor the name and postoffice of every person nominated; and that at least ten days before the election the several county auditors shall publish the nominations in one or more newspapers; that when any person declines a nomination he must give written notice to the secretary of state twenty-five days before the election. The purpose of this time limit is that the secretary of state may have proper time to certify the nominations to the several county auditors.

Now it appears that at Grand Forks on June 20, 1917, twenty days before the election, there was held a convention of 196 persons, claiming to be Republican delegates of the first congressional district, and that at such convention Olger B. Burtness was declared the nominee of the Republican party for representative in Congress, and he offered to file a certificate of such nomination with the secretary of state; and the secretary declined to file it, insisting that the nominations must be made according to the statute and the proclamation of the governor. Now, though the nominations may have been certified to the county auditors before the holding of the Grand Forks convention, and though the ballots may have been printed, the court is asked to issue a mandate to the executive department or the secretary of state commanding him, in effect, to undo all that he has done, and to permit Mr. Burtness and other candidates to decline and withdraw their nominating petitions and to file his nominating certificate, and to certify such nomination to the county auditors, so that the name of Burtness may appear on the ballot as the Republican candidate. It is claimed that the Grand Forks convention was held in accordance with the old caucus and convention system which has not been in use since the adoption of the Primary Election Laws; but there is no proof to sustain such claim, and the presumption is against it. In fact, after the date of the governor's proclamation, the time was not sufficient for the giving of notices, the holding of caucuses, the holding of county conventions, and the election of delegates to a congressional convention. And it does not appear that the call for such a convention was made by any authorized person, nor that any person had a right to overrule the governor and the executive department in regard to the manner of making the nominations. It was purely a political and party act; and the governor, the secretary of state, and the attorney general had been elected as Republi-

cans by a great majority, and, in the language of President Wilson: The governor was the captain of the team. It was for him to give orders to play ball. The convention was not called by the chairman of the Republican state central committee, or by anyone having special authority, or any authority, to call such a convention. The court must take judicial notice of the fact that William Lemke is the chairman of the state central committee of the Republican party. He is, in effect, the bishop of the Republican party, and he is to be honored and respected accordingly. He is not to be overruled or ignored by any political ex-bishops, ex-deacons, or ex-anything, because his views differ from their views. The Scriptural command is: Obey them that have rule over you. That is the way to avoid anarchy, and it is the way to prevent a house, a party, or a state from falling by reason of being divided against itself. If it were proper to call a Republican convention to nominate a person to represent the state of North Dakota in Congress, the call should have been made by the governor or by the chairman of the Republican state central committee, and by no other person or persons.

However, it is entirely clear that the old caucus system has been wholly abrogated. At general elections all party nominations must be made in accordance with the Primary Election Laws. At either general or special elections, individual or independent nominations may be made by procuring and filing with the secretary of state a certificate of nomination signed by the requisite number of voters, as provided for by § 501, Code 1899; Laws 1891, chap. 66; Laws 1893, chap. 60; and in that way the nominations in question were duly made and certified to the county auditors,—and that is the end of the matter. The only purpose of this proceeding is to secure a party label for one of the candidates. It is not the province of the court to label them or to supervise the political discretion and action of the executive department. Full faith and credit must be given to the official action of the Republican central committee and its chairman, yet the nomination of John M. Baer must rest on his petition, signed by thousands of voters, in accordance with the statute and the proclamation of the executive department. We do not overlook the fact that the time limit fixed by the statute for the doing of certain things does not necessarily apply to a special election, but in this case it was necessary and proper for

the executive department, in issuing its call for a special election, to fix a time limit so as to make the election practicable, and its action must be sustained. The order to show cause is dismissed.