# IN RE PROCEEDINGS TO CONTEST ELECTION UPON AMENDMENT NO. 17 TO CHARTER OF CITY OF MINNEAPOLIS.

99 N. W. (2d) 468.

November 20, 1959—No. 37,900.

*Benjamin Drake, Jr.,* and *John W. Simpson,* for appellant.

*Charles A. Sawyer,* City Attorney, and *Dabe J. Shama,* Assistant City Attorney, for respondent.

*Charles H. Clay, Harold C. Evarts, James L. Hetland, Jr., Robert J. Johnson, Verne C. Johnson, Gerald E. Magnuson, Roger L. Nordbye, Melvin I. Orenstein, Clinton A. Schroeder,* and *Archibald Spencer,* for Citizens League of Minneapolis and Hennepin County, amicus curiae.

*Dorfman & Rudquist, Leo Dorfman,* and *David McGannon,* for 33 liquor dealers, amici curiae.

582

MURPHY, JUSTICE.

After the district court ordered judgment upholding the declared adoption of Amendment No. 17 to the Home Rule Charter of the city of Minneapolis, contestant appealed from an order denying his motion for a new trial.

Both parties have agreed to a stipulation of facts. Amendment No. 17 was duly presented to the voters of the city of Minneapolis in a special city election June 9, 1959. The amendment provided for an extension of the liquor patrol limits in Minneapolis and for prohibition of issuance of liquor licenses outside the new patrol limits to any new locations except upon approval by a referendum to be held in the ward and precinct in which and adjacent to which the proposed location is situated. The total number of legal voters voting on Amendment No. 17 was 104,327, of which 61,010 or 58.44 percent voted for adoption of the amendment. The contestant argues that this vote was not sufficient under the applicable Minnesota law to adopt the proposed amendment. The question presented for decision is whether the election upon Amendment No. 17 is governed by M. S. A. 410.12, subd. 4, as amended by L. 1959, c. 305, § 4, which would require a 55-percent majority, or by § 410.04, which would require a 75-percent majority for adoption. Both the Minneapolis election canvassing board and the trial court concluded that the 58.44-percent vote was sufficient for the adoption of the amendment.

In support of his contention that a 75-percent vote was required to carry the amendment, the contestant points to § 410.04, which provides:

"Any city or village in the state may frame a city charter for its own government in the manner hereinafter prescribed; *provided, that in such cities having patrol limits established by charter, such limits shall not be altered unless the charter proposing such alteration be adopted by a three-fourths majority.*" (Italics supplied.)

It is the contention of the contestant that this section provides exclusively for the method of alteration of patrol limits established by charter. As authority he cites eight Minnesota decisions which stand generally for the propositions that (a) when the literal meaning of the words of a statute fails to disclose the intention of the legislature, a

court may construe the statute in order to give effect to the true legislative purpose and (b) a literal application of a statute should not govern its construction when that would lead to an absurd result or nullify the statute being construed.[1] The contestant further argues that the statute indicates that the legislature intended a more strict control of patrol limits than of other matters pertaining to municipal affairs and cites an attorney general's opinion dated September 4, 1956, in support of that contention.

It should be noted, however, that the italicized portion of § 410.04, which refers to the 75-percent majority requirement, is a restatement of the language used in Minn. Const. art. 4, § 36, relating to the authorization of a city or village to frame a charter for its own government. Section 36 states in part:

"* * * Provided, that in cities having patrol limits now established, such charter shall require a three-fourths majority vote of the qualified voters voting at such election to change the patrol limits now established."

This constitutional provision was repealed by L. 1957, c. 809, adopted at a general election on November 4, 1958, and in place thereof the present art. 11 of the state constitution was adopted. Art. 11, § 4, so far as is here applicable now provides:

"The legislature shall provide by law for charter commissions. * * * Home rule charter amendments may be proposed by a charter commission or by a petition of five percent of the voters of the local government unit as determined by law and shall not become effective *until approved by the voters by the majority required by law. Amendments may be proposed and adopted in any other manner provided by*

---

[1] Edberg v. Johnson, 149 Minn. 395, 184 N. W. 12; Thomas v. Stevenson, 146 Minn. 272, 178 N. W. 1021; State ex rel. Chase v. Minnesota Tax Comm. 135 Minn. 205, 160 N. W. 498; State ex rel. Maryland Cas. Co. v. District Court, 134 Minn. 131, 158 N. W. 798; State ex rel. Patterson v. Bates, 96 Minn. 110, 104 N. W. 709; Street v. Chicago, M. & St. P. Ry. Co. 124 Minn. 517, 145 N. W. 746; Manston v. McIntosh, 58 Minn. 525, 60 N. W. 672, 28 L. R. A. 605; Clementson v. Minnesota Tribune Co. 45 Minn. 303, 47 N. W. 781.

*law*. A local government unit may repeal its home rule charter and adopt a statutory form of government or a new charter upon the same majority vote as is required by law for the adoption of a charter in the first instance." (Italics supplied.)

It follows from the repeal of art. 4, § 36, and the adoption of art. 11, § 4, of the state constitution that the legislature was given authority to fix the percentage of votes required to carry municipal elections, including amendments to a city charter. Accordingly, the legislature, pursuant to the grant of authority contained in art. 11, § 4, at its 1959 regular session expressly provided by c. 305, § 4 (§ 410.12, subd. 4), for the percentage of votes necessary to carry an amendment to a city charter. That act provides:

"* * * If fifty-five percent of the votes cast on any amendment are in favor of its adoption, copies of the amendment and certificates shall be filed, as in the case of the original charter and the amendment shall take effect in 30 days from the date of the election or at such other time as is fixed in the amendment."

While L. 1959, c. 305, does not expressly repeal § 410.04, it does by clear and unequivocal language provide that a 55-percent vote "in favor of its adoption" will carry "any amendment." It should be emphasized that it applies to *any* amendment and makes no exception of an amendment relating to patrol limits.

Conceding that § 410.04 was valid when enacted and not specifically repealed by L. 1959, c. 305, it is apparent that its requirement of a 75-percent majority is not controlling on the subject of charter amendments. A city or village is authorized by § 410.04 to "frame a city charter for its own government in the manner hereinafter prescribed"; and that section further provides that "cities having patrol limits established by charter" and desiring to alter such limits must secure a 75-percent majority for its adoption. Does § 410.04 exclusively control the alteration of patrol limits as the contestant contends? It is our view that the words of § 410.04 are clear and unambiguous. The words "unless the charter proposing such alteration" must be construed in light of the first clause of the paragraph, which states "Any city * * * may frame a city charter * * *." It does not refer to an amendment

of the charter. The applicability of the section is limited to those situations where a city proposes a new charter which contains provisions altering preexisting patrol limits. It is our view that § 410.04 applies to the adoption of new charters and is consistent with § 410.12, subd. 4, which governs amendments to charters.

Under the existing provisions of law relating to home rule charters, a 55-percent majority vote is sufficient for adoption of a new charter (§ 410.11); a 75-percent vote is necessary for adoption of a new charter which contains a provision altering patrol limits (§ 410.04); and a 55-percent majority is sufficient to carry any amendment to an existing home rule charter (§ 410.12, subd. 4). It may be asserted that this interpretation presents an anomaly in that the adoption of a new charter which alters preexisting patrol limits requires a much greater majority than either the adoption of a charter or an amendment to it. While we must accept the law as we find it and are not obliged to speculate as to the reasons which prompted the legislature to permit this difference to exist, the fact remains that the law as it now stands discourages the submission of a new charter which includes patrol-limit revision. It cannot be said that this arrangement is without purpose. Under § 410.04 the submission of a new charter to the electorate of a city or village does not require publication. Where an amendment is proposed, however, the law provides (§ 410.12, subd. 4) that it shall be fully published for 4 consecutive weeks and then appear on the ballot in such form that the voter can understand it. Under the provisions of § 410.12, subd. 4, the amendment is publicized and considered separately. If submitted as part of a new charter proposal, it would not be publicized and its importance might be overlooked in consideration of the larger issues represented by the adoption of an entirely new charter.

We agree with the trial court that there is no ambiguity in c. 410 and therefore no room for construction by the court.[2] The very lan-

---

[2]M. S. A. 645.16 provides in part: "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."

guage of § 410.04 clearly indicates that it applies to the adoption of a new charter. The clear language of § 410.12, subd. 4, applies to "any" amendment to a city charter. It is well-settled law in Minnesota that a statute is to be enforced literally if its language embodies a definite meaning which involves no absurdity or contradiction. Peterson v. Halvorson, 200 Minn. 253, 273 N. W. 812. Since the provisions of these statutes apply to separate and defined areas, we are not at liberty to extend their meaning by a process of construction, since construction lies only in the domain of ambiguity. 17 Dunnell, Dig. (3 ed.) § 8938; State ex rel. University of Minnesota v. Chase, 175 Minn. 259, 220 N. W. 951; Minneapolis-Honeywell Regulator Co. v. Nadasdy, 247 Minn. 159, 76 N. W. (2d) 670; Griswold v. County of Ramsey, 242 Minn. 529, 65 N. W. (2d) 647; Minneapolis-St. Paul Sanitary Dist. v. City of St. Paul, 240 Minn. 434, 61 N. W. (2d) 533.

It is our view that § 410.04 is clear and unambiguous and needs no interpretation. Section 410.12, subd. 4, is consistent with the clear language of § 410.04 and negatives any implication that a 75-percent majority is required to change patrol limits.

In view of the foregoing holding it is unnecessary to discuss the other points raised by the briefs and arguments of the parties.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.